**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 6, 2012

No. 10-40279

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

OSCAR CANTU-RAMIREZ, also known as Cowboy, also known as Carin;
LAURO ABEL GRIMALDO

Defendants - Appellants.

Appeals from the United States District Court
for the Eastern District of Texas

Before SMITH, PRADO, and ELROD, Circuit Judges.

JENNIFER WALKER ELROD, Circuit Judge:

Oscar Cantu-Ramirez ("Cantu-Ramirez"), Raul Cantu-Ramirez ("Raul"), and Lauro Abel Grimaldo ("Grimaldo") appeal their sentences and convictions relating to their alleged roles in a 16-person conspiracy to distribute tens of thousands of pounds of drugs throughout the United States.  We AFFIRM.

No. 10-40279

# I.

## A.    The Conspiracy[1]

This case arises from the successful investigation and prosecution of an international criminal organization that trafficked in significant amounts of marijuana and cocaine.  The conspirators brought drugs from Mexico to the United States in a conspiracy so large that law enforcement investigated it on two fronts simultaneously. The first front was based in Texas, the second in Mississippi.  The conspirators regularly shipped thousands of pounds of marijuana and hundreds of kilograms of cocaine at a time across the Mexican border and to various destinations in the United States ranging from Laredo to New York.

Nazario Cavazos ran the drug trafficking organization, and Cantu-Ramirez and Grimaldo were major figures in his organization. Cantu-Ramirez's co-conspirators testified that he was one of Cavazos's most trusted confidantes. Cantu-Ramirez negotiated the sale of marijuana and cocaine with an undercover agent; was responsible for the delivery of four marijuana samples to the agent; discussed customers who did not pay for drugs with co-conspirators; took orders for cocaine and marijuana from customers and co-conspirators; transported and collected payment for drugs on behalf of Cavazos; and was present when a vast quantity of marijuana was delivered to a business called Landmark Tile that testimony showed acted as a regular stopping point on the drugs' journey from Mexico to their ultimate destinations in the United States.

Grimaldo was also heavily involved in the conspiracy.  Officer John Gottlob testified that Grimaldo was instrumental in supplying Cavazos with drivers to make the journey necessary to deliver giant stashes of drugs to destinations all across the United States.  Grimaldo also personally delivered

---

[1] We view the facts in the light most favorable to the jury verdict.  *E.g.*, *United States v. Strong*, 371 F.3d 225, 227 (5th Cir. 2004); *see also Garriott v. NCsoft Corp.*, 661 F.3d 243, 245 n.1 (5th Cir. 2011).

2

1,000 pounds of marijuana to help the conspiracy and recruited and supervised his drivers, instructing them to call him as they cleared checkpoints designed to detect illegal cargo. Grimaldo was paid for his role, and he paid his drivers from the proceeds.

## B.    Proceedings Below

A grand jury returned a one-count indictment charging Cantu-Ramirez, Raul, Grimaldo, and thirteen others with conspiracy to manufacture or distribute or possess with intent to manufacture or distribute a controlled substance in violation of 21 U.S.C. § 846. Cantu-Ramirez, Raul, and Grimaldo were arrested pursuant to a warrant issued when the indictment was returned. After their arrest, Raul and Grimaldo knowingly and voluntarily waived their rights and agreed to answer law enforcement officers' questions.

Raul and Cantu-Ramirez are brothers.  Before trial, Raul made incriminating statements to law enforcement.  Cantu-Ramirez moved to sever his case from Raul's, claiming that no jury could compartmentalize the evidence against the brothers and give them both a fair trial.  The district court denied the motion to sever and allowed the admission of Raul's confession on the condition that the parties agree to redactions of the confession to eliminate all reference to Cantu-Ramirez.  The district court also instructed the jury that Raul's statements were evidence against him only and not to consider his statements as evidence against any other defendant.

During trial, but outside the presence of the jury, the government called Immigration and Customs Enforcement Special Agent David Guerra Jr. to address any remaining concerns about Raul's oral statement.  After hearing Special Agent Guerra's testimony and Cantu-Ramirez's objections, the district court found Raul's redacted statement was admissible. When the jury returned, the district court warned it to consider Raul's statement only against him. Raul's redacted statement never mentioned Cantu-Ramirez.

Grimaldo made incriminating statements to law enforcement in an interview shortly after his early morning arrest. He received a *Miranda* warning and waived his rights, but he did not sign a written waiver. His interview occurred approximately ninety minutes before he was presented to a magistrate judge. Grimaldo argued at a suppression hearing that his statements were coerced and that his waiver of his *Miranda* rights was not voluntary. The Magistrate Judge issued a report recommending the denial of Grimaldo's Motion to Suppress. The district court adopted that recommendation.

The jury returned a guilty verdict against each defendant. It found Cantu-Ramirez responsible for the possession or distribution of five kilograms or more of cocaine, 1,000 kilograms or more of marijuana, and some amount of ecstasy/MDA. It found Raul responsible for the possession or distribution of 1,000 kilograms or more of marijuana. Grimaldo was found responsible for the possession or distribution of five kilograms or more of cocaine and 1,000 kilograms or more of marijuana.

Prior to sentencing, the probation officer prepared a pre-sentence report ("PSR") and determined that Grimaldo was responsible for 693.14 kilograms of cocaine and 15,124.22 kilograms of marijuana, which converted to a total marijuana equivalency of 153,752.22 kilograms of marijuana and a base offense level of 38 under the Guidelines. The probation officer added three levels based upon the determination that Grimaldo played a leadership role in the conspiracy. With no criminal history points, his criminal history category was I, and his recommended Guidelines range of imprisonment was 324–405 months.

At the sentencing hearing, the district court sustained the government's objection to the three-level increase for Grimaldo's leadership role, increasing it to a four-level increase. The court also overruled Grimaldo's objections to the drug amount the PSR attributed to him. The court calculated Grimaldo's offense level at 42, which corresponded to a Guidelines sentencing range of 360 months

to life imprisonment.  Grimaldo requested a sentence of 120 months, noting several mitigating factors under 18 U.S.C. § 3553(a), such as his age, strong work history, family ties, and the effect incarceration would have on his family. The district court sentenced Grimaldo to 360 months, noting that his sentence was at the bottom of the Guidelines range.  The court did not address his Section 3553(a) arguments at all. The district court sentenced Cantu-Ramirez to 360 months imprisonment, the low-end of his Guidelines range, and to five years supervised release.  It sentenced Raul to 121 months imprisonment.  It sentenced Grimaldo to 360 months imprisonment, the low-end of his Guidelines range, and to five years supervised release.  Cantu-Ramirez, Raul, and Grimaldo timely appealed.  We have since dismissed Raul's appeal and consolidated Cantu-Ramirez's and Grimaldo's appeals.

## II.

### A.    Grimaldo waived his severance argument.

Grimaldo argues that the district court erred by failing to sever his case from his co-defendants'.   That argument fails.  We recently held, in *United States v. Bernegger*, that where an appellant failed to move to sever before trial as Federal Rule of Criminal Procedure 12(b) requires, he waived his severance argument on appeal.  661 F.3d 232, 236–37 (5th Cir. 2011) (per curiam).  Here, Grimaldo not only failed to move for severance before trial, he also failed to object to joinder and failed to join the motion to sever of his co-defendant. Accordingly, he has waived his severance argument.

### B.    The district court did not err by denying Grimaldo's Motion to Suppress his confession.

Grimaldo argues that the district court should have granted his Motion to Suppress his confession because DEA agents delayed presenting him to a magistrate judge for a little more than two hours for the purpose of interviewing

him and extracting a confession.[2]  The government responds that Grimaldo has failed to demonstrate a causal connection between the delay and his confession.

Whether a confession is admissible or not turns on whether it was made voluntarily. *See, e.g., United States v. Seale*, 600 F.3d 473, 482 (5th Cir. 2010) (citing *Haynes v. Washington*, 373 U.S. 503, 513 (1963)).  In reviewing a district court's judgment on a motion to suppress, we review the district court's factual findings for clear error and the ultimate issue of voluntariness, a legal conclusion, *de novo. United States v. Clay*, 408 F.3d 214, 221 (5th Cir. 2005).

Before the enactment of  Federal Rule of Criminal Procedure 5(a), an officer's obligation to present an arrestee before a magistrate judge without unreasonable delay was a common law requirement, and federal courts enforced it by suppressing a defendant's confession made after unreasonable delay.  *See Corley v. United States*, 556 U.S. 303, 306–07 (2010).  The purpose of that rule was to "prevent secret detention" and "to inform a suspect of the charges against him." *Id.* at 306 (citing *Mcnabb v. United States*, 318 U.S. 332, 342 (1943)).  In *Mallory v. United States*, the Supreme Court applied the newly enacted Rule 5(a) and held that a confession made about seven hours after arrest was inadmissible due to unnecessary delay.  354 U.S. 449, 455 (1957).  "Thus, the rule known simply as *McNabb-Mallory* generally renders inadmissible confessions made during periods of detention that violate the prompt presentment requirement of Rule 5(a)."  *Corley*, 556 U.S. at 309 (internal quotation marks and alterations

---

[2] The government's argument that the purpose of the delay in this case was not to interrogate Grimaldo fails for at least two reasons.  First, its own agent testified that Grimaldo was taken to the DEA office "for processing and interview."  Second, the government offers no other valid explanation for the delay. It points out that Grimaldo was arrested early in the morning but does not contend that no magistrate judge was available. Indeed, it admits that the record is silent on that question.  At another point, it argues that "at least the sole testifying agent was unfamiliar with the location of the federal courthouse." That argument is unpersuasive. Not only is the government silent as to the other (non-testifying) agent's knowledge of the courthouse's location, but two DEA agents certainly could have acquired directions to the courthouse within two-plus hours if they had desired to do so. Thus, we agree with Grimaldo that the purpose of the delay was to interrogate him.

omitted). The *McNabb-Mallory* rule requires that there be no unreasonable delay in presenting a person accused of crime before a neutral magistrate after his or her arrest. *Id.* at 308–09.

Things changed in 1968, when Congress enacted 18 U.S.C. § 3501(c), which provides that a court may not suppress a confession made during a six-hour safe-harbor period solely due to delay in presentment if the confession was made voluntarily and if the weight to be given the confession is left to the jury. The statute also provides for an extension of the six-hour time limit in any case in which the delay in bringing such a person before a magistrate is found by the trial judge to be reasonable considering the means of transportation and the distance to be traveled to the nearest magistrate. 18 U.S.C. § 3501(c).

The Supreme Court recently held that Section 3501(c) did not supplant the *McNabb-Mallory* rule, but rather modified the rule to "provide immunization to voluntary confessions given within six hours of a suspect's arrest." *Corley*, 556 U.S. at 311. The Court set forth a two-part test for assessing potential violations of the prompt-presentment requirement:

> [A] district court with a suppression claim must find whether the defendant confessed within six hours of arrest (unless a longer delay was "reasonable considering the means of transportation and the distance to be traveled to the nearest available magistrate"). [1] If the confession came within that period, it is admissible, subject to the other Rules of Evidence, so long as it was "made voluntarily and the weight to be given it is left to the jury." [2] If the confession occurred before presentment and beyond six hours, however, the court must decide whether delaying that long was unreasonable or unnecessary under the *McNabb-Mallory* cases, and if it was, the confession is to be suppressed.

*Id.* at 322.

Applying *Corley* to this case, Grimaldo's presentment was delayed for less than six hours, and thus his confession is admissible so long as it was voluntarily made and the weight to be given it is left to the jury. *Id.* No one disputes that

the weight to be given to Grimaldo's confession was left to the jury. Thus, the question here is whether his confession was voluntary. *Id.*

Title 18 U.S.C. § 3501(b) instructs trial judges to consider the totality of the circumstances in determining voluntariness. It provides that:

> (b) The trial judge in determining the issue of voluntariness shall take into consideration all the circumstances surrounding the giving of the confession, including (1) the time elapsing between arrest and arraignment of the defendant making the confession, if it was made after arrest and before arraignment, (2) whether such defendant knew the nature of the offense with which he was charged or of which he was suspected at the time of making the confession, (3) whether or not such defendant was advised or knew that he was not required to make any statement and that any such statement could be used against him, (4) whether or not such defendant had been advised prior to questioning of his right to the assistance of counsel; and (5) whether or not such defendant was without the assistance of counsel when questioned and when giving such confession.

> The presence or absence of any of the above-mentioned factors to be taken into consideration by the judge need not be conclusive on the issue of voluntariness of the confession.

Grimaldo was arrested at approximately 5:30 a.m. and transported to the Houston field division of the DEA thirty to forty-five minutes later. He did not appear to be suffering from any mental or physical impairments. A DEA agent testified that he told Grimaldo that Grimaldo had been indicted for a drug conspiracy in the Eastern District of Texas. The agent also testified that he advised Grimaldo, whose English was good, of his *Miranda* rights by reading them off a card. Grimaldo confirmed that he understood his rights, waived them, and agreed to answer questions. The interview lasted for approximately 90 minutes, and the atmosphere was relaxed. Agents wore t-shirts and jeans, Grimaldo was not handcuffed, officers never raised their voices at him, Grimaldo was allowed to call his wife several times, and he was allowed to call his boss to tell him he would not be at work that day. Grimaldo made incriminating statements during the interview, and after the magistrate judge heard evidence

during a suppression hearing and denied Grimaldo's motion, the district court adopted the magistrate judge's recommendation and introduced Grimaldo's statements at trial without objection.

Grimaldo ignores the totality of the circumstances test to argue that a confession following an interim delay for the purpose of interrogation is *per se* involuntary. *Corley* itself forecloses that argument. In *Corley*, the Supreme Court confronted a delay for the purpose of interrogation. 556 U.S. at 311 ("Though the office was in the same building as the chambers of the nearest magistrate judges, the agents did not bring Corley before a magistrate, but questioned him instead, in hopes of getting a confession."). The Court did not hold that the confession was automatically inadmissible simply because it followed on the heels of a delay for the purpose of interrogation. *Id.* at 308. Instead, the Court explained the rule discussed above and remanded the case to the Third Circuit to determine (1) whether the delay in that case fell within the 6-hour window and (2) if not, whether it was unreasonable or unnecessary. *Id.* at 322–23. Moreover, Section 3501(b) mentions the *length* of the delay as a factor to be considered in the totality of the circumstances necessary to determine voluntariness, but it does not mention the *purpose* of the delay. It would be odd for the entire totality of the circumstances analysis to hinge on a factor that Congress failed to mention when laying out the relevant factors for courts to consider when determining voluntariness. Therefore, the fact that the delay in this case was for the purpose of interrogation does not, by itself, render Grimaldo's confession involuntary and therefore inadmissible.

Our precedent indicates, however, that the fact that the delay was for the purpose of interrogation is nevertheless relevant to the totality of the circumstances analysis. In *United States v. Bustamante-Saenz*, we held that the denial of a motion to suppress was proper where there was "nothing . . . that suggest[ed] that Bustamante's presentment before the magistrate was delayed for the purpose of interrogation or for any other malevolent reason." 894 F.2d

114, 120 (5th Cir. 1990); *see also United States v. Martin*, 431 F.3d 846, 849 (5th Cir. 2005) ("Where there is no evidence to support a finding that the delay was for the purpose of obtaining a confession, there is no evidence that the delay had a coercive effect on the confession, and the confession was otherwise voluntarily given, we hold that the defendant has not shown prejudice by the delay.") (internal quotation marks and alterations omitted).

Thus, although a confession following a delay for the purpose of interrogation is not involuntary *per se* in light of *Corley*, that does not mean that it is irrelevant to the totality of the circumstances test 18 U.S.C. § 3501(b) requires. Where officers delay for the purpose of interrogation, it is more likely that they will conduct an interview that could tend to overwhelm a defendant's will, rendering the subsequent confession involuntary. *See United States v. Perez-Bustamante*, 963 F.2d 48, 53 (5th Cir. 1992) (explaining that the 60-hour delay in that case did not render the defendant's confession inadmissible because, among other things, "there [was] no evidence that the interrogation was lengthy, hostile, or coercive"). We must therefore determine whether the delay in this case resulted in an interrogation that was so "lengthy, hostile, or coercive," that it would tend to overwhelm the defendant's will. *Id.* If it did, then the delay and the nature of the interrogation could merit suppression of the confession under the totality of the circumstances test.

The record in this case indicates that Grimaldo's interview was not hostile at all. The interview lasted only 90 minutes, the agents wore casual clothing, Grimaldo was not handcuffed, the agents offered Grimaldo food and drink, Grimaldo was allowed several phone calls to his wife and boss, and the agents read him his rights and took care to ensure that he understood and voluntarily waived them. In these circumstances, the officers' delay for the purpose of interviewing Grimaldo did not result in a hostile interview that might tend to render a confession involuntary. Accordingly, we conclude that although the delay for the purpose of interrogating Grimaldo is a relevant consideration

within the totality of the circumstances test, nothing else about Grimaldo's interview indicates that his confession was involuntary.

Having addressed the delay and the interview itself, we proceed to consider the other Section 3501(b) factors:

> (1) the time elapsing between arrest and arraignment of the defendant making the confession, if it was made after arrest and before arraignment, (2) whether such defendant knew the nature of the offense with which he was charged or of which he was suspected at the time of making the confession, (3) whether or not such defendant was advised or knew that he was not required to make any statement and that any such statement could be used against him, (4) whether or not such defendant had been advised prior to questioning of his right to the assistance of counsel; and (5) whether or not such defendant was without the assistance of counsel when questioned and when giving such confession.

The delay between Grimaldo's arrest and presentment was well within *Corley*'s six-hour safe-harbor window. Grimaldo was arrested at around 5:30 a.m., and after a 45 minute drive to the DEA's Houston field office, he was interviewed for at most 90 minutes before being presented to the magistrate judge. Given that the delay in this case fell within *Corley*'s safe harbor and that we have found confessions admissible after much longer delays, this first factor favors admission of Grimaldo's confession. *See, e.g.*, *Perez-Bustamante*, 963 F.2d at 51–52 (holding that a 60-hour delay in presentment did not render a confession involuntary). Uncontradicted testimony established that agents read Grimaldo his rights and ensured that he understood them before he confessed. Accordingly, the second, third, and fourth factors favor admission as well. The fifth factor favors suppression because Grimaldo did not have the assistance of counsel at the time that he made his confession.

Grimaldo knew his rights, the delay in this case was brief, and nothing about the interview itself indicates that it was hostile or that his confession occurred because his will not to confess was overwhelmed. Having reviewed all of the Section 3501(b) factors and considered the delay in this case in particular

depth, we conclude that, in the totality of the circumstances, Grimaldo's confession was voluntarily made and the district court did not err in admitting it.

### C. The district court did not err in finding the drug quantity and leadership role attributable to Grimaldo or in announcing his sentence.

Grimaldo argues that the district court erred both procedurally and substantively in sentencing him. Specifically, he contends that when determining the applicable Sentencing Guideline range, the district court erred in calculating the drug amount attributable to him and in applying the organizer/leader role sentencing enhancement. He also insists that the district court did not adequately explain its reasons for rejecting his arguments for a sentence outside the guideline range.

We review a district court's interpretation or application of the Sentencing Guidelines *de novo* and its factual findings for clear error. *United States v. Huerta*, 182 F.3d 361, 364 (5th Cir. 1999). District courts enjoy wide discretion in determining which evidence to consider and to credit for sentencing purposes. *United States v. Cooper*, 274 F.3d 230, 240 (5th Cir. 2001). For the reasons that follow, we conclude that the district court's factual findings about the drug quantity attributable to Grimaldo and his leadership role were not clearly erroneous. Moreover, although the district court erred in articulating its reasons for sentencing Grimaldo, he has not shown that the error affected his substantial rights, and it is therefore not reversible.

### 1. Drug Quantity

Grimaldo argues that the discrepancy between the quantity of drugs the jury found him responsible for and the amount the district court found attributable to him for sentencing purposes renders his sentence procedurally erroneous. The jury determined that Grimaldo was responsible for over five kilograms of cocaine and over 1,000 kilograms of marijuana. It was not asked

to make a more specific finding regarding the exact quantity of drugs for which Grimaldo was responsible. At sentencing, however, the district court adopted the PSR's conclusion that Grimaldo was responsible for 693.14 kilograms of cocaine and 15,235.22 kilograms of marijuana.[3] Grimaldo does not dispute that these amounts were based upon the testimony at trial. He also concedes that the Probation Officer making the calculation was careful to ensure that amounts were not double-counted. Grimaldo's only argument, both here and before the district court at his sentencing hearing, is that the figures are based solely upon the biased testimony of his co-conspirators and are therefore unreliable.

The district court addressed Grimaldo's concern at the sentencing hearing. It pointed out that in order to find him responsible even for the lesser amounts for which he was found guilty, the jury had to believe precisely the same testimony from precisely the same co-conspirators that supported the larger drug quantities the PSR attributed to him. Given that the jury was not asked to be more specific about the drug quantity attributable to Grimaldo, the district court had to evaluate independently whether the testimony given at trial supported the amounts indicated in the PSR. The district court reviewed that testimony in open court and found it sufficient to show by a preponderance of the evidence that Grimaldo was responsible for the amounts of drugs reported in the PSR.

We have held that a PSR ordinarily bears sufficient indicia of reliability to be considered evidence by the district court. *Cooper*, 274 F.3d at 239. The district court may adopt the facts contained in the PSR without further inquiry if the facts have an adequate evidentiary basis and the defendant does not present rebuttal evidence. *Id.* (citation omitted). Grimaldo put forward no such

---

[3] Where different types of drugs are involved, U.S. Sentencing Guidelines Manual § 2D1.1 directs that their marijuana equivalency must be calculated. In this case, Grimaldo's marijuana equivalency was 153,752.22 kilograms of marijuana, resulting in a base offense level of 38. U.S. Sentencing Guidelines Manual § 2D1.1(c)(1).

rebuttal evidence. Instead, he merely argued that because the witnesses against him were his co-conspirators, they were automatically unreliable. In response, the district court noted that there were many such witnesses, and their testimony was consistent. Moreover, the district court was correct that the co-conspirator testimony that supported the PSR's calculation was also the only evidence available to support the jury's verdict. Thus, to find that evidence categorically unreliable for sentencing purposes, where the government's burden of proof is by a preponderance of the evidence, would automatically call into question the jury's verdict, which was based on the higher beyond a reasonable doubt standard. For these reasons, we conclude that the district court did not clearly err in adopting the PSR's drug quantity calculation.

### 2.    Leadership Role

Grimaldo also argues that the district court committed another sentencing error by finding that he had a leadership role in the conspiracy. "If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive," a four-level increase is warranted. U.S. Sentencing Guidelines Manual § 3B1.1.(a). When deciding whether to apply the enhancement, the district court should consider: "the exercise of decision making authority, the nature of participation in the commission of the crime, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control exercised over others." *Id.* cmt. n.4.

Testimony at trial showed that Grimaldo led a transportation cell that was integral to the conspiracy's operations. He subcontracted drivers and equipment, recruited drivers, paid them less than he owed them (thereby keeping a larger portion of the proceeds for himself), recruited and supervised six co-conspirators, instructed drivers on where and when to go and when to call him to check in, and oversaw the distribution of multi-ton quantities of marijuana and several

thousand kilos of cocaine.  In deciding the enhancement applied, the district court noted that Grimaldo could be an organizer or leader based upon his "exercise of decision making over his drivers [and] recruitment of drivers" and that Grimaldo "obviously claimed a right to a larger share of the fruits of the crime, since he didn't pay his drivers as he promised, and probably kept more of the money for himself anyway."  The court also noted that Grimaldo "certainly would have planned transportation, planning the use of his trucks and getting jobs for some of his drivers at Cowan Systems."  Thus, the record demonstrates that the district court's conclusion that Grimaldo satisfied the Guidelines qualifications for the four-level enhancement was plausible, and the district court did not clearly err in finding that Grimaldo was a leader.

### 3.    Section 3553(a) Variance Request

Grimaldo argues that his sentence is procedurally unreasonable because the district court did not adequately explain it.   Congress requires the sentencing court to state "the reasons for its imposition of the particular sentence."  18 U.S.C. § 3553(c).  While sentences within the Guidelines require "little explanation," *United States v. Mares*, 402 F.3d 511, 519 (5th Cir. 2005), *see also Rita v. United States*, 127 S. Ct. 2456, 2468 (2007), more is required if the parties present legitimate reasons to depart from the Guidelines: "Where the defendant or prosecutor presents nonfrivolous reasons for imposing a different sentence . . . the judge will normally go further and explain why he has rejected those arguments,"  *Rita*, 127 S. Ct. at 2468.  The district court's explanation "allow[s] for meaningful appellate review and . . . promote[s] the perception of fair sentencing." *Gall v. United States*, 128 S. Ct. 586, 597 (2007).

During the sentencing hearing, Grimaldo argued that he was 35 years old, had been married for 14 years, had high school aged children, had complied with the conditions of his pretrial release, was cooperative with his attorney, had a high school education, held some licenses, had a lengthy and productive work history, and had no criminal history other than a 1993 misdemeanor charge.  He

requested a sentence below the Guidelines level under 18 U.S.C. § 3553(a). The factors Grimaldo cited are relevant considerations under 18 U.S.C. § 3553(a)(1). The district court sentenced Grimaldo to 360 months, the bottom of the Guidelines range but neither mentioned Grimaldo's § 3553(a) arguments nor gave reasons for rejecting them. The government concedes this was plain error under *Rita* and *United States v. Mondragon-Santiago*, 564 F.3d 357, 363–64 (5th Cir. 2009).

Because Grimaldo did not preserve this error, it will not justify reversal unless he can demonstrate that it affected his substantial rights. *Mondragon-Santiago*, 564 F.3d at 363–64. To make that showing, he must demonstrate a reasonable probability that his sentence would have been lower had the district court not committed the error. *See United States v. Davis*, 602 F.3d 643, 648 (5th Cir. 2010).

Grimaldo's sole argument that the district court's failure to address his § 3553(a) arguments affected his substantial rights is that it made meaningful appellate review impossible. Our precedents foreclose that argument so far as within-Guidelines sentences are concerned. *See Mondragon-Santiago*, 564 F.3d at 365 (citing *United States v. Izaguirre-Losoya*, 219 F.3d 437, 441–42 (5th Cir. 2000) ("The district court's failure to articulate precise reasons for imposing the sentence did not impair the defendant's substantial rights.")). Grimaldo's sentence falls at the bottom of the Guidelines range, and he fails to show that an explanation would have changed his sentence. Accordingly, we hold that the district court's failure to explain Grimaldo's sentence does not require reversal because such failure did not affect his substantial rights.

## III.

Cantu-Ramirez was tried before the same jury as his co-defendant-brother, Raul. The government referred to Cantu-Ramirez and Raul as brothers in its opening statement and argued that their involvement in this case was intertwined. Raul's post-arrest statements were read to the jury through the

testimony of Agent David Guerra, but Raul did not take the stand. Raul's statement was redacted to eliminate any reference whatsoever to Cantu-Ramirez, and the district court instructed the jury as follows:

> The government's next witness is agent Dave Guerra. Agent Guerra will be asked questions by Ms. Rattan about statements made by Defendant Raul Ramirez after Raul Ramirez was arrested. I need to instruct you that these statements can only be considered as evidence against Raul Ramirez and not any of the other defendants. In other words, these are the statements by Raul Ramirez. You can consider them in connection with your consideration of the case against him, but not against the other two defendants.

Raul's statement was then read to the jury, but Cantu-Ramirez was never mentioned. Indeed, the fact that the statement had been redacted was never revealed to the jury. Cantu-Ramirez argues that his Sixth Amendment right to confront witnesses against him was violated when the district court admitted Raul's redacted statement. That argument fails.

Alleged Confrontation Clause violations are reviewed *de novo*, and are subject to harmless error analysis. *United States v. Ramos-Cardenas*, 524 F.3d 600, 606 (5th Cir. 2008). The Supreme Court has held that admission of a co-defendant's confession at trial does not violate a co-defendant's Confrontation Clause rights when the confession is redacted to eliminate the defendant's name and any indication that the defendant participated in the crime. *Richardson v. Marsh*, 481 U.S. 200, 211 (1987). The same is true even if the confession incriminates the defendant when linked with evidence introduced later at trial. *Id.* When the co-defendant's statement is only "inferentially incriminating" the Supreme Court has held that the jury is more likely to follow the district court's limiting instruction. *Id.* at 208.

Raul's confession was redacted to delete any reference whatsoever to Cantu-Ramirez, and the district court gave a thorough protective instruction. Thus, under *Richardson*, the introduction of Raul's confession at trial did not violate Cantu-Ramirez's Confrontation Clause rights. It is true that in *Gray v.*

*Maryland*, the Supreme Court held that a defendant's Confrontation Clause rights were violated when his name was replaced with blank spaces and, when read into evidence at trial, with the word "deleted" or "deletion." 523 U.S. 185, 188 (1998). The Supreme Court reasoned that this sort of redaction will not prevent the jury from realizing that the confession refers specifically to the defendant and cautioned that "the obvious deletion may well call the jurors' attention specially to the removed name." *Id.* at 193. The *Gray* Court distinguished its holding in *Richardson*, noting that while the *Richardson* confession incriminated the non-testifying defendant when linked with evidence admitted later, the *Gray* confession invited the jury to infer immediately that the deletions referred to the non-testifying defendant even if offered before other evidence at the trial. *Id.* at 196. *Gray* does not apply to this case, however. Raul's confession was read to the jury in a manner that concealed even the fact that any deletions had been made. Thus, nothing about Raul's confession invited the jury to infer that there were any deletions made, much less that those deletions referred to Cantu-Ramirez.

Moreover, Cantu-Ramirez points to no part of Raul's confession that incriminates him. His argument instead is that because the jury knew that he and Raul are brothers and worked together to deliver drugs, it would connect Raul's statement to him. The fact that Cantu-Ramirez and Raul are brothers, however, does not necessarily mean that admission of Raul's statement violated Cantu-Ramirez's Confrontation Clause right. *See United States v. Cartwright*, 6 F.3d 294, 300 (5th Cir. 1993) (holding that there was no plain error where father's statement referring to his co-defendant son was admitted). In this case, Raul's statement did not implicate Cantu-Ramirez because it literally never mentioned him at all.

Finally, Cantu-Ramirez argues that because the confession was introduced late in the trial, his motion to suppress should have been granted and his objection at trial sustained. The government correctly points out, however, that

18

the mere fact that Raul's confession was introduced after other evidence established that he and Cantu-Ramirez were involved in the conspiracy together does not prevent the jury from following the district court's limiting instruction. *See United States v. Jimenez*, 77 F.3d 95, 98 (5th Cir. 1996) (holding that the introduction of a redacted confession during rebuttal did not violate a co-defendant's Confrontation Clause rights). Thus, we hold that Cantu-Ramirez's Confrontation Clause rights were not violated by the admission of Raul's confession.[4]

**AFFIRMED**.

---

[4] Cantu-Ramirez's attempt to adopt any of the arguments Grimaldo raised that might be helpful to him also fails. We only permit defendants to adopt claims raised by each other under Federal Rule of Appellate Procedure 28(i) if those claims are not fact specific. *United States v. Moser*, 123 F.3d 813, 819 n.3 (5th Cir. 1996) (citation omitted). Each of Grimaldo's arguments is very fact specific. The first has to do with the precise details of Grimaldo's own confession. The second involves the district court's failure to sever his case; and the third discusses the particulars of his sentence. Moreover, as discussed above, each of Grimaldo's arguments fails, meaning none of them could help Cantu-Ramirez anyway. Accordingly, Cantu-Ramirez may not adopt any of Grimaldo's arguments.