# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-40617

United States Court of Appeals
Fifth Circuit

**FILED**

November 26, 2014

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

LUIS PEREZ-BAROCELA,

Defendant-Appellant

Appeals from the United States District Court
for the Southern District of Texas
USDC No. 2:12-CR-757-2

Before REAVLEY, SMITH, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

Luis Perez-Barocela appeals his conviction for conspiring to possess with intent to distribute more than 1,000 kilograms of marijuana. He also challenges the calculation of his sentencing range under the Guidelines and the district court's dismissal of his motion to continue sentencing. We AFFIRM.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

FACTS AND PROCEDURAL BACKGROUND

Luis Perez-Barocela, Raul Peraza-Trejo, and Oscar Quijano were charged with conspiring to possess with intent to distribute more than 1,000 kilograms of marijuana. Peraza-Trejo and Quijano pled guilty, while Perez-Barocela proceeded to trial before a jury. The government's witnesses at trial included Quijano; co-conspirators Jose Antonio Benitez, Ernesto Cabrera-Enriquez, and Noe Galindo, Jr., all of whom pled guilty to various drug offenses; Homeland Security Investigations ("HSI") agent Charles Lehmann; and Drug Enforcement Administration ("DEA") agent David Bishop.

Benitez, Cabrera-Enriquez, and Galindo all testified that they were commercial truck drivers and that Perez-Barocela had recruited them to transport loads of marijuana through the Falfurrias checkpoint between October 2011 and February 2012 in return for payments ranging from $30,000 to $50,000. Each co-conspirator further testified that he was arrested at the checkpoint when agents discovered in his truck between 1,200 and 2,600 pounds of marijuana belonging to Perez-Barocela and Peraza-Trejo. According to the testimony, Perez-Barocela and Peraza-Trejo obtained the marijuana, sometimes led the loading and unloading process, and accompanied the trucks through the border in a white GMC, blue Nissan Altima, or blue Jeep Liberty. Cabrera-Enriquez and Galindo both identified Peraza-Trejo as the leader of the operation. The co-conspirators also provided agents with Perez-Barocela's phone number, and Benitez and Galindo identified Perez-Barocela and Peraza-Trejo in photo arrays.

Quijano, also a truck driver, testified that he did not transport marijuana across the border but instead loaned his truck to Perez-Barocela and Peraza-Trejo for this purpose in return for $30,000. He corroborated much of Benitez's

and Galindo's testimony, provided agents with Perez-Barocela's phone number, and identified Perez-Barocela and Peraza-Trejo in photo arrays.

Agent Lehmann testified that he was working at the Falfurrias checkpoint when Cabrera-Enriquez was arrested. He participated in Cabrera-Enriquez's interview, developed photo arrays to identify the members of the conspiracy, and tracked down Perez-Barocela's phone based on the phone number provided by Cabrera-Enriquez.

Agent Bishop, the case agent, linked the arrests of Benitez, Cabrera-Enriquez, and Galindo. He testified that Benitez, Quijano, and Perez-Barocela worked together as truck drivers for Eagle Systems. He also testified that a white SUV was registered to Perez-Barocela and that Peraza-Trejo rented a blue Nissan Altima from September 2011 to December 2011. Surveillance photos taken at the Falfurrias checkpoint confirmed that those vehicles crossed through the checkpoint in temporal proximity to the trucks transporting the marijuana. Agent Bishop also linked the co-conspirators' phone numbers, testifying that there were 63 calls between Perez-Barocela and Benitez, 160 calls between Perez-Barocela and Cabrera-Enriquez, six calls between Perez-Barocela and Galindo, and 108 calls between Perez-Barocela and Quijano.

Perez-Barocela and the government stipulated that the trafficked substance was marijuana and that its net weight exceeded 1,000 kilograms. The government rested, and Perez-Barocela did not call any witnesses. After Perez-Barocela unsuccessfully moved for a judgment of acquittal, the jury returned a guilty verdict.

The pre-sentence report ("PSR") determined that Perez-Barocela's total offense level was 39, which reflected a base offense level of 34, a two-point enhancement for threatening a witness, and a three-point enhancement for Perez-Barocela's role as a manager or supervisor of criminal activity that

involved five or more participants or was otherwise extensive. The PSR indicated that Perez-Barocela had accrued three criminal history points due to a 2003 New Jersey conspiracy conviction, placing him in criminal history category II. Perez-Barocela's Sentencing Guidelines range was 292 to 365 months imprisonment. Perez-Barocela filed several objections, and in response, the probation officer filed an amended PSR.

When Perez-Barocela appeared for sentencing, he asked for a continuance so that he could continue to debrief with the government. The government responded that Perez-Barocela had already debriefed and that an additional meeting was unlikely to yield useful information. The court accepted the government's argument and proceeded with the sentencing. After overruling Perez-Barocela's objections to the PSR and rejecting his request for a downward departure or variance, the district court sentenced Perez-Barocela to 292 months in prison and five years of probation. Perez-Barocela timely appealed to this court.

## DISCUSSION

### I. Sufficiency of Evidence Supporting Verdict

Perez-Barocela argues that the district court erred in denying his motion for a judgment of acquittal. We review the denial of a motion for a judgment of acquittal *de novo*. *United States v. Girod*, 646 F.3d 304, 313 (5th Cir. 2011). The jury's verdict will be affirmed if "any reasonable trier of fact could have found that the evidence established guilt beyond a reasonable doubt." *United States v. Ochoa*, 667 F.3d 643, 647 (5th Cir. 2012) (citation omitted). "[W]e do not evaluate the weight of the evidence or the credibility of the witnesses, but view the evidence in the light most favorable to the verdict, drawing all reasonable inferences to support the verdict." *Girod*, 646 F.3d at 313 (citation omitted).

No. 13-40617

To establish conspiracy, the government must demonstrate that: (1) an agreement existed between two or more persons to perform an illegal activity, (2) the defendant knew of the agreement, and (3) the defendant voluntarily participated in the activity. *See Ochoa*, 667 F.3d at 648. Perez-Barocela argues that both the character of the evidence (circumstantial) and the inferences that could reasonably be drawn from it were insufficient to support his conviction for conspiring to possess marijuana with the intent to distribute it.

First, Perez-Barocela contends that the only evidence linking him to the conspiracy is circumstantial testimony from co-conspirators. Jurors, though, may "infer any element of [conspiracy] from circumstantial evidence." *United States v. Lechuga*, 888 F.2d 1472, 1476 (5th Cir. 1989). More specifically, "[a]s long as it is not factually insubstantial or incredible, the uncorroborated testimony of a co-conspirator, even one who has chosen to cooperate with the government in exchange for non-prosecution or leniency, may be constitutionally sufficient evidence to convict." *United States v. Westbrook*, 119 F.3d 1176, 1190 (5th Cir. 1997) (citation omitted). Consequently, the government was permitted to rely on the testimony of co-conspirators to link Perez-Barocela to the conspiracy.

Next, Perez-Barocela argues that the government's evidence proved, at most, that his legitimate work in the trucking industry resulted in his association with criminals. There is little basis for this claim. Testimony from Perez-Barocela's co-conspirators and Agents Lehmann and Bishop detailed Perez-Barocela's recruitment of co-conspirators to transport marijuana, accompaniment of shipments across the border, arrangement of transportation inside the United States, phone conversations with co-conspirators, and payment of co-conspirators. Viewed in the light most favorable to the verdict, this evidence was sufficient for a rational trier of fact to find beyond a

reasonable doubt that Perez-Barocela conspired to possess marijuana with the intent to distribute it.

*II. Assessment of Three Criminal History Points for Prior Conviction*

Perez-Barocela argues that the district court erred when it increased his offense level by three points for his New Jersey conspiracy conviction. We review a district court's interpretation and application of the Sentencing Guidelines *de novo*. *United States v. Cantu-Ramirez*, 669 F.3d 619, 628 (5th Cir. 2012). The Guidelines instruct district courts to assess three criminal history points "for each prior sentence of imprisonment exceeding one year and one month." U.S.S.G. § 4A1.1(a). If such a sentence is "totally stayed or suspended," however, the government should assess only one criminal history point. §§ 4A1.1(c), 4A1.2(a)(3).

Perez-Barocela, while conceding that his sentence for the New Jersey conviction exceeded one year and one month, notes that his sentence was stayed pending appeal and argues that the government was not permitted to rely on Westlaw's reproduction of the opinion confirming his sentence to demonstrate that it was no longer stayed or suspended.[1] He claims the government was instead required to introduce the judicial record verifying his affirmed sentence. According to Perez-Barocela, this requirement follows from the Supreme Court's decision in *Shepard v. United States*, 544 U.S. 13 (2005). In *Shepard*, the Court held that the government may not rely on police reports and complaint applications to prove that a defendant's conviction satisfies the

---

[1] Perez-Barocela also argued in his objections to the PSR that, regardless of whether his sentence was affirmed, the enhancement was unwarranted because he never actually served his sentence. Perez-Barocela has not briefed this issue on appeal and we therefore decline to consider it. *See Brinkman v. Dallas Cnty. Deputy Sheriff Abner*, 813 F.2d 744, 748 (5th Cir. 1987).

elements of generic burglary, but instead must rely on the charging document, the plea agreement or transcript related to the plea, or a comparable judicial record. *Id.* at 16, 26.

*Shepard* "does not apply when determining whether the government has satisfied its burden of proof as to the existence of a prior conviction." *United States v. Neri-Hernandes,* 504 F.3d 587, 591 (5th Cir. 2007). For proof of a conviction we consider whether the documents relied upon "have sufficient indicia of reliability to support their probable accuracy . . . ." *Id.* The government may rely on uncertified case summaries so long as they are reliable and the defendant fails to offer contradictory evidence. *Id.* Here, the district court appropriately relied on Westlaw's reproduction of the opinion affirming Perez-Barocela's sentence, because it is a reliable reproduction of a judicial record and Perez-Barocela has offered no evidence undermining its reliability. Accordingly, the district court did not err in enhancing Perez-Barocela's offense level by three points.

## III. Three-Point Increase in Offense-Level for Managerial Role in Conspiracy

Perez-Barocela argues that the district court erred when it increased his offense level by three points for playing a managerial role in the conspiracy. He alleges that he "was a mere pawn in Raul Peraza-Trejo's drug trafficking organization . . . ." We review a district court's factual findings for sentencing purposes for clear error. *Cantu-Ramirez,* 669 F.3d at 628. "District courts enjoy wide discretion in determining which evidence to consider and to credit for sentencing purposes." *Id.* (citation omitted). Accordingly, clear error will not be found so long as a factual finding "is plausible in light of the record read as a whole." *United States v. Puig-Infante,* 19 F.3d 929, 942 (5th Cir. 1994) (citation omitted). The defendant bears the burden of proving that the

evidence relied upon by the district court is "materially untrue" and therefore implausible. *Id.* at 943.

Under the Sentencing Guidelines, the offense level of a defendant may be increased by three points if he played a managerial or supervisory role in a criminal activity but not a leadership or organizational role. § 3B1.1(b). The commentary to the Guidelines instructs courts to consider the following factors when distinguishing managers and supervisors from leaders and organizers: (1) "the exercise of decision making authority," (2) "the nature of participation in the commission of the offense," (3) "the recruitment of accomplices," (4) "the claimed right to a larger share of the fruits of the crime," (5) "the degree of participation in planning or organizing the offense," (6) "the nature and scope of the illegal activity," and (7) "the degree of control and authority exercised over others." § 3B1.1 cmt. n.4. We use these same factors to determine whether a district court erred in finding that a defendant was a manager or supervisor. *See United States v. Reagan*, 725 F.3d 471, 494 (5th Cir. 2013).

Perez-Barocela contends that his recruitment of others to transport marijuana does not give rise to the conclusion that he was a manager in the conspiracy to transport marijuana. He further contends that there was no evidence that he negotiated the amounts or prices of the marijuana or that he received more money than his co-conspirators. These specific gaps in the evidence, however, do not undermine what the evidence *as a whole* plausibly establishes.

The detailed, consistent testimony from Perez-Barocela's co-conspirators, as corroborated and substantiated by Agents Lehmann and Bishop, demonstrated that Perez-Barocela: (1) recruited Benitez, Cabrera-Enriquez, and Galindo to drive trucks through the Falfurrias checkpoint carrying marijuana hidden amongst legitimate cargo in exchange for cash

payments; (2) escorted the trucks across the checkpoint; (3) arranged for the marijuana to be offloaded onto trailers and hidden amongst legitimate cargo; and (4) made over three hundred phone calls to Benitez, Cabrera-Enriquez, Galindo, and Quijano to coordinate these operations.

Upon this evidence, the district court could plausibly conclude not only that Perez-Barocela recruited accomplices, as he claims, but that he exercised decision-making authority, participated heavily in the transportation of the marijuana, planned and organized the transportation, and exercised control over his co-conspirators. In other words, the court could plausibly find that no fewer than six out of the seven factors mentioned in the Guidelines mitigated in favor of finding that Perez-Barocela played a managerial or supervisory role in the criminal activity. Accordingly, the district court did not clearly err in assessing the three-point enhancement.

*IV. Two-Point Increase in Offense Level for Witness Intimidation*

Perez-Barocela contends that the district court erred when it increased his offense level by two points for threatening a witness. Our review is for clear error. *Cantu-Ramirez*, 669 F.3d at 628. We also consider that a district court "can adopt facts contained in a PSR without inquiry if those facts had an adequate evidentiary basis and the defendant does not present rebuttal evidence." *Puig-Infante*, 19 F.3d at 943 (citation omitted).

Under the Sentencing Guidelines, the offense level of a defendant who played an aggravating role in a criminal activity may be increased by two points for witness intimidation or obstruction of justice. § 2D1.1(b)(15)(D). Perez-Barocela contends that the testimony and information contained in the PSR were insufficient to demonstrate that he threatened the witness Quijano. He did not, though, provide rebuttal evidence in support of his claim and

therefore cannot meet his burden of demonstrating that the evidence relied upon was materially untrue and implausible.

Furthermore, there is no basis upon which to conclude that the district court exercised its discretion improperly. Quijano testified that, during March 2013, while he and Perez-Barocela were incarcerated in the Karnes City Corrections Center pending trial, Perez-Barocela threatened to harm him and his family if he cooperated with the government. He further testified that he called his wife and asked her to inform his lawyer of these threats, and that he was transferred to a different facility three weeks later. The PSR notes that recorded phone conversations between Perez-Barocela and Quijano corroborate Quijano's testimony and that Perez-Barocela had attempted to persuade Quijano to sign paperwork indicating that he was not involved in the conspiracy. In addition, the government offered to provide, if necessary, testimony from a DEA agent and recorded phone conversations corroborating the then-existing evidence. Taken together, this evidence could certainly support a finding that Perez-Barocela threatened Quijano. Accordingly, the district court did not clearly err in levying the two-point enhancement.

*V. Rejection of Motion to Continue Sentencing*

Perez-Barocela advances two related arguments regarding the district court's rejection of his motion to continue sentencing. First, he claims that the court violated the Federal Rules of Criminal Procedure by failing to explicitly rule on his motion or find that such a ruling was unnecessary. Second, he claims that the court plainly erred in failing to grant his motion.

*a. Failure to Rule Explicitly on Motion*

The district court's compliance with the Federal Rules of Criminal Procedure is a question of law subject to *de novo* review. *See United States v.*

*Medina*, 161 F.3d 867, 874 (5th Cir. 1998).  Under Rule 32(i)(3)(B), a court "must – for any disputed portion of the presentence report or other controverted matter – rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing . . . ."  FED. R. CRIM. P. 32(i)(3)(B).  Perez-Barocela claims that the district court failed to rule on his motion for continuance.

We start by noting that a motion for continuance, even if its grounds are that sentencing should be delayed, is not clearly encompassed within the just-quoted subpart of Rule 32.  Further, both parties spoke at length regarding the motion for continuance, and the judge posed numerous questions.  The court then held there was not "any reason to pursue" additional debriefing, confirmed that the government did not wish to do so, and determined to "go ahead with sentencing."  These comments clearly though implicitly denied Perez-Barocela's motion.  Moreover, the court adopted the PSR and imposed a sentence within the range it prescribed, actions which were entirely inconsistent with Perez-Barocela's motion for continuance.  Denials of motions that are implicit in the rulings of a district judge are valid.  *United States v. Aggarwal,* 17 F.3d 737, 745 (5th Cir. 1994).

Regardless of the general acceptability of implicit rulings, Perez-Barocela construes Rule 32(i)(3)(B) as requiring a court to state *explicitly* its denial of a motion or determination that a ruling is unnecessary.  As noted, Rule 32(i)(3)(B) does not, by its terms, clearly apply to a motion for continuance during sentencing.  It also does not require an explicit statement from the court.  Indeed, we have suggested that an implicit rejection may suffice.  For example, we have held that the imposition of a Guidelines sentence implicitly

denied a request for a downward departure. *See United States v. Hernandez*, 457 F.3d 416, 424 (5th Cir. 2006).

The district court's comments, adoption of the PSR, and imposition of a sentence falling within the Guidelines range prescribed by the PSR constituted an implicit and sufficient of the motion for continuance.

### b. Failure to Grant Motion

If a claim of error is raised for the first time on appeal, review is for plain error. *Puckett v. United States*, 556 U.S. 129, 135 (2009). To demonstrate plain error, an appellant must prove that an error: (1) occurred; (2) was plain; (3) affects substantial rights; and (4) "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Id.* (quoting *United States v. Olano*, 507 U.S. 725, 736 (1993)).

Perez-Barocela argues that the district court plainly erred in rejecting his motion to continue his sentencing. He asserts that the court should have granted the motion because, had he debriefed with the government, the government might have filed a U.S.S.G. § 5K1.1 motion, which, if granted, would have decreased his sentencing range.

Rule 32(i)(3)(B) does not, by its terms, require a judge to grant a motion for a continuance when there is any possibility that doing so might cause the government to file a motion that, if granted, would reduce the defendant's sentence. In fact, since this possibility always exists, such a construction would render every denied motion for a continuance plainly erroneous. Perhaps for this reason, Perez-Barocela can cite no case supporting his interpretation. Accordingly, there are no grounds upon which to find that the district court's denial of Perez-Barocela's motion was error, let alone plain error.

Additionally, under the third prong of plain error analysis, an error "must have affected the outcome of the district court proceedings." *Olano*, 507

U.S. at 734.  Perez-Barocela, however, cannot demonstrate that he would have received a lower sentence if the court had granted his motion, because he has put forth no evidence suggesting that the government would have filed a Section 5K1.1 motion after debriefing.  In fact, the existing evidence suggests the opposite.   After conducting one debriefing with Perez-Barocela and determining that he had not been truthful, accepted responsibility for his actions, or provided useful information, the government determined that a second debriefing would be useless.  The government did not file a Section 5K1.1 motion after the first debriefing, and the evidence suggests that it would not have done so after a second debriefing.

Because we determine that no plain error affecting substantial rights occurred, the final factor of the plain-error analysis is inapplicable.

The district court did not plainly err by denying Perez-Barocela's motion for a continuance.

AFFIRMED.

13