**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
January 13, 2012

Lyle W. Cayce
Clerk

No. 10-51238

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

JOHNNY OCHOA, JR.,

Defendant - Appellant.

Appeal from the United States District Court
for the Western District of Texas

Before SMITH, PRADO, and ELROD, Circuit Judges.

JENNIFER WALKER ELROD, Circuit Judge:

A jury found Johnny Ochoa, Jr. guilty of (1) conspiracy to possess with intent to distribute at least five kilograms of cocaine and (2) unlawful use of a communication facility, in this case a cell phone. The district court sentenced him to 235 months and 48 months, running concurrently. On appeal, Ochoa argues that there was insufficient evidence to support his conspiracy conviction. He also argues that the district court erred in denying his Motion to Suppress information obtained from his cell phone as well as statements he made before and after arrest. Specifically, he contends that officers lacked probable cause

to arrest him and that their search of his cell phone was illegal. Finally, Ochoa challenges his sentence. We conclude that there was sufficient evidence to support Ochoa's conspiracy conviction. We also conclude that the district court did not err by denying the motion to suppress. The officers reasonably believed that they had probable cause to arrest Ochoa, and the information found during the search of Ochoa's cell phone would have been inevitably discovered during the inventory of his car. Finally, we conclude that the district court committed no error in sentencing him. Accordingly, we AFFIRM the district court in all respects.

## I.

While patrolling the area south of Uvalde, Texas, Border Patrol Agent Juan Gomez received a dispatch over the radio to be on the lookout for a small, two-tone truck.[1] Shortly thereafter, Gomez saw the truck, which was driving approximately 100 miles per hour in the rain, and followed it into a gas station. He then noticed that the driver was gripping the steering wheel and looking in the rearview mirror repeatedly. Gomez also noticed that the truck did not have license plates. Accordingly, he decided to initiate a stop of the truck when it left the gas station.

The driver identified himself as Jesus Guerra and told Gomez that he was traveling to Uvalde to pick up his grandmother. When questioned further, however, Guerra did not know the route to Uvalde. Gomez then noticed that the license plates were on the dashboard of the truck and asked why they were not on the truck, but Guerra did not have a good explanation. It was later confirmed that the plates did not belong to the truck driven by Guerra. At that point, Guerra gave consent for Gomez to search his truck. Gomez and another agent

---

[1] The evidence is reviewed in the light most favorable to the verdict. *United States v. Salazar*, 542 F.3d 139, 143 (5th Cir. 2008).

found six packages of cocaine in the truck with a total value of $150,000 in the floorboard of the truck and arrested Guerra.

Agents from the Drug Enforcement Administration (DEA) arrived to question Guerra. After being read his rights, Guerra agreed to make a statement. He told the DEA agents that he was delivering the cocaine to Waco, Texas for Armando Lopez, with ultimate delivery to some unknown person. Lopez had given him a phone number ("the 254 number") for a person identified as "Julio4," with instructions to call him when he arrived in Waco. Guerra agreed to cooperate with the DEA agents to make a controlled delivery.

Although Guerra did not know the name of the person he was meeting, Lopez had told Guerra to identify himself as "Eagle Pass," and the recipient of the drugs would identify himself as "Waco." The 254 number was in the ashtray of the truck when he retrieved it from the Wal-Mart in Eagle Pass. He subsequently lost the phone number, however, and received it in a text message. The agents arranged for Guerra to run his hands through his hair, a "bust signal," to indicate that he had made contact with Waco.

As Guerra drew near Waco, he called the 254 number and was told to stop at the gas station at exit 334A. Following the direction of the DEA agents, Guerra told Julio4 that he had missed his exit and was at the Exxon station at exit 334B. He was told that Waco would be there in five minutes. Approximately seven minutes later, Guerra saw a vehicle pass through the parking lot; the driver was on his cell phone. Moments later, Guerra received a phone call from Julio4 telling him that everything was okay and that he was to follow the car. The vehicle stopped behind Guerra's truck. Guerra walked up to the open window, and the driver identified himself as Waco and asked if Guerra was Eagle Pass. Guerra gave the bust signal. He later identified the driver of the vehicle as the defendant in this case, Johnny Ochoa. The DEA agents arrested Ochoa and gave him his *Miranda* warnings on the way to the DEA office.

One of the DEA agents, Agent Pennington, drove Ochoa's car to the DEA office. While he was driving, he heard a cell phone ring several times but could not find it. When the team of agents arrived at the DEA office, Agent Hundley located the phone and gave it to Officer Thrash. Thrash looked through the contact list and located the 254 number that Guerra had called earlier in the evening under the nickname "Julio4." Although there were no phone calls directly between Ochoa and Guerra, phone records submitted by the government confirmed that Ochoa had been in contact with Julio4 six or seven times that evening.

Agent Thrash questioned Ochoa after confirming that he had been given his *Miranda* warnings. Ochoa first told Thrash that he had gone to the Exxon to meet someone. He immediately changed his story, telling Thrash that he had gone to the Exxon to get a Snickers bar. Thrash terminated the interview and let another officer question Ochoa. Before the officer began the questioning, Ochoa placed a bag of methamphetamine from his pocket on the table. Thrash seized the drugs.

Guerra was charged as a co-defendant and pleaded guilty. Ochoa was tried before a jury. Guerra and various law enforcement officers testified for the government, and Ochoa neither testified himself nor called any witnesses. After a two-day trial, the jury found Ochoa guilty of both counts.

At sentencing, the government sought a mandatory minimum sentence of twenty years under 21 U.S.C. § 841(b)(1)(A) based on a state conviction for possession of methamphetamine.[2] To prove the state conviction, the government introduced fingerprint evidence linking the prints on the booking card for the state conviction to Ochoa's prints from the current offense. The district court chose not to apply the Section 841(b)(1)(A) enhancement and sentenced Ochoa

---

[2] That statute provides, "If any person commits such a violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment which may not be less than 20 years." 21 U.S.C. § 841(b)(1)(A)(ii).

to 235 months' imprisonment, and ten years of supervised release for conspiracy to possess with intent to distribute at least five kilograms of cocaine. It sentenced him to 48 months' imprisonment and one year supervised release for unlawful use of a communication facility. It ordered the sentences to be served concurrently.

Ochoa filed a timely notice of appeal, challenging both his conviction and his sentence.

## II.

### A.    Whether the evidence was sufficient to support Ochoa's conspiracy conviction.

Ochoa first argues that there was insufficient evidence to convict him of conspiracy to possess with intent to deliver cocaine in violation of 21 U.S.C. §§ 841, 846.[3] Ordinarily, the standard of review for sufficiency of the evidence is whether any reasonable trier of fact could have found that the evidence established guilt beyond a reasonable doubt. *United States v. Hayes*, 342 F.3d 385, 389 (5th Cir. 2003). Here, however, Ochoa never moved for a judgment of acquittal. Therefore, we review only to determine whether the conviction amounts to a manifest miscarriage of justice. *United States v. Aguilar*, 503 F.3d 431, 435 (5th Cir. 2007). This standard is "far more strict" than plain error review. *United States v. Mudekunye*, 646 F.3d 281, 293 (5th Cir. 2011). Ochoa's conviction should be reversed only if "the record is devoid of evidence pointing to guilt or contains evidence on a key element of the offense that is so tenuous that a conviction would be shocking." *United States v. Dowl*, 619 F.3d 494, 500 (5th Cir. 2010); *see Aguilar*, 503 F.3d at 435.

To establish a conspiracy, the government must prove that: (1) an agreement existed between two or more persons to violate federal narcotics law, (2) the defendant knew of the existence of the agreement, and (3) the defendant

---

[3] Ochoa does not challenge his conviction for unlawful use of a communication facility.

voluntarily participated in the conspiracy. *United States v. Cardenas*, 9 F.3d 1139, 1157 (5th Cir. 1993). Ochoa argues that the government failed to prove the second and third elements, namely, that Ochoa knew the agreement was to transport cocaine and voluntarily participated in it.

"[E]ach element may be proven by circumstantial evidence," *United States v. Mulderig*, 120 F.3d 534, 547 (5th Cir. 1997), and proof of a tacit conspiratorial agreement is sufficient, *United States v. Freeman*, 434 F.3d 369, 376 (5th Cir. 2005). To prove the defendant's participation in a conspiracy, it is not necessary to prove that he knew exactly how others would carry out their parts of the scheme:

> Where the activities of one aspect of the scheme are necessary or advantageous to the success of another aspect of the scheme or to the overall success of the venture, where there are several parts inherent in a larger common plan, or where the character of the property involved or nature of the activity is such that knowledge on the part of one member concerning the existence and function of other members of the same scheme is necessarily implied due to the overlapping nature of the various roles of the participants, the existence of a single conspiracy will be inferred.

*United States v. Thomas*, 12 F.3d 1350, 1358 (5th Cir. 1994) (quoting *United States v. Elam*, 678 F.2d 1234, 1246 (5th Cir. 1982)); *see also United States v. Rodriguez,* 553 F.3d 380, 391 n.4 (5th Cir. 2008) ("Conspiracy law contemplates the existence of subgroups."). Furthermore, we have inferred knowledge of the conspiracy when the defendant is entrusted to carry a large amount of drugs. *United States v. Villarreal*, 324 F.3d 319, 324 (5th Cir. 2003) (inferring knowledge based on drugs that were worth $300,000).

We hold that the evidence is sufficient to affirm Ochoa's conviction. Taking all of the evidence in the light most favorable to the verdict, the government established both that Ochoa knew of, and voluntarily participated in, the conspiracy:

- Ochoa was present at the gas station where the drop-off was arranged to occur,
- Julio4 told Guerra that his contact would arrive at the gas station in five minutes, and Ochoa arrived seven minutes later,
- Ochoa pulled up behind Guerra's truck,
- the truck he drove was not registered to him,
- Guerra received a phone call from the 254 number moments after he saw Ochoa on his phone,
- Guerra was instructed by his contact at the 254 number to follow the car that had just pulled into the gas station,
- Ochoa used designated code names to identify both himself and Guerra,
- he told Guerra to follow him and began pulling out of the gas station,
- the cocaine was worth approximately $150,000,
- Ochoa had been in contact six or seven times with the person at the 254 number,
- the 254 number was saved in Ochoa's contact list under the name "Julio4,"
- during questioning, Ochoa gave conflicting reasons for his presence at the gas station, and
- he turned over a bag of methamphetamine during questioning.

Based on Guerra's testimony and the phone records submitted by the government, the jury could reasonably infer that Julio4 directed the conspiracy involving Ochoa and Guerra and told Ochoa when and where to go for the drop off. Ochoa had been in ongoing contact with Julio4 throughout the evening before he met Guerra. Moreover, the large amount of drugs involved and Ochoa's knowledge of the secret code names indicate that he knew the illegal purpose of the conspiracy. In sum, sufficient evidence supported the jury's verdict.

**B.    Whether the district court erred in denying Ochoa's motion to suppress.**

Ochoa next argues that the district court erred by denying his Motion to Suppress the information retrieved from his cell phone and the statements he made both before and after his arrest. It is undisputed that the officers here had neither an arrest warrant nor a search warrant. When reviewing the denial of

a motion to suppress, we review factual findings for clear error and conclusions of law *de novo*. *United States v. Scroggins*, 599 F.3d 433, 440 (5th Cir. 2010). Six witnesses, including Ochoa's co-defendant, Guerra, testified for the government at the hearing on the motion to suppress. Ochoa did not testify or call any witnesses. The district court did not make any factual findings or give the legal basis for its ruling, saying only that it "agree[d] with the government's position."

### 1.    *Probable Cause to Arrest*

First, despite the district court's conclusion to the contrary, Ochoa argues that the agents did not have probable cause to arrest him. A warrantless arrest is justified if the arresting officers had probable cause to believe that the defendant committed a felony. *United States v. Watson*, 273 F.3d 599, 602 (5th Cir. 2001). "Probable cause for a warrantless arrest exists when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Id.* (quoting *United States v. Wadley*, 59 F.3d 510, 512 (5th Cir.1995)). The officer making the arrest need not have direct knowledge of all of the facts establishing probable cause, as long as he has communicated with the officer who does. *United States v. Ibarra*, 493 F.3d 526, 531 (5th Cir. 2007).

Ochoa argues that the agents arrested him based on three facts: (1) Guerra was driving from Eagle Pass to Waco to deliver a load of cocaine, (2) Guerra received telephone instructions that an unknown party would meet him at the designated location, and (3) Ochoa drove through the parking lot and Guerra gave the bust signal. He misconstrues the facts, however. As detailed above, Ochoa did not simply drive through the parking lot; the agents watched Ochoa drive directly to Guerra's car and park his car behind it. Moreover, Guerra's contact told him that someone would be arriving to meet him in five minutes, and Ochoa arrived seven minutes later. The agents had arranged for Guerra to

give the bust signal once the contact identified himself by his code name, and the agents saw him give it after talking to Ochoa briefly.  In addition, Ochoa got back into his car to drive out of the parking lot immediately after talking to Guerra.  The agents testified that they believed they had probable cause to arrest Ochoa.  For these reasons, we conclude that officers had probable cause to arrest Ochoa because the totality of the facts and circumstances within the officers' knowledge at the moment of arrest was sufficient for a reasonable person to conclude that he had committed an offense.  *Watson*, 273 F.3d at 602 (quoting *Wadley*, 59 F.3d at 512).

### 2.     *Search of Ochoa's Cell Phone*

Second, Ochoa challenges the search of his cell phone.  The government argues in response that the search was legal and that, even if it was not, the district court properly denied the motion to suppress because the cell phone would have been inevitably discovered when officers later conducted a routine inventory search of the vehicle.  The government made the same arguments at the hearing on the motion to suppress before the district court, and the district court denied the motion noting simply that it "agree[d] with the government's position."  We conclude that we need not determine whether the search itself was proper because, in any event, the cell phone would have inevitably been discovered pursuant to law enforcement's routine inventory search of the vehicle.

"The inevitable discovery doctrine applies if the Government demonstrates by a preponderance of the evidence that (1) there is a reasonable probability that the contested evidence would have been discovered by lawful means in the absence of police misconduct, and (2) the Government was actively pursuing a substantial alternate line of investigation at the time of the constitutional violation." *See United States v. Zavala*, 541 F.3d 562, 579 (5th Cir. 2008).

The government argues that Ochoa's cell phone would have been discovered during the lawful inventory of his vehicle.  "[A]n inventory search of a seized vehicle is reasonable and not violative of the Fourth Amendment if it is

conducted pursuant to standardized regulations and procedures that are consistent with (1) protecting the property of the vehicle's owner, (2) protecting the police against claims or disputes over lost or stolen property, and (3) protecting the police from danger." *Id.* (quoting *United States v. Hope*, 102 F.3d 114, 116 (5th Cir. 1996)). We have recognized that evidence initially seized improperly should not be suppressed if it would have been discovered pursuant normal police practices. *United States v. Seals*, 987 F.2d 1102, 1108 (5th Cir. 1993); *see also United States v. Castro*, 166 F.3d 728, 734 (5th Cir. 1999).

Agent Robertson testified that DEA has standard operating procedures calling for an inventory of a vehicle to protect the agency from claims of lost or stolen property. Indeed, pursuant to those procedures, agents began taking an inventory of Ochoa's car shortly after the cell phone was seized. Further, there was at least a reasonable probability that the agents would have uncovered the cell phone, which had been ringing as one of the agents drove Ochoa's car to the agency, during the inventory. Accordingly, we hold that the district court properly denied the motion to suppress based on the inevitable discovery rule.

**C.    Whether the district court erred in sentencing Ochoa.**

In his third issue on appeal, Ochoa argues that the district court "erred at sentencing in finding the Government had proven its enhancement allegations, and then sentencing below the mandatory minimum." Where a defendant fails to object to a sentencing enhancement, we review for plain error. *United States v. Garza-Lopez*, 410 F.3d 268, 272 (5th Cir. 2005).

Ochoa's argument is factually incorrect: the district court did not apply the sentencing enhancement. The government sought a sentencing enhancement under 21 U.S.C. § 841(b)(1)(A), which provides that "[i]f any person commits . . . a violation [of this subsection] after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment which may not be less than 20 years and not more than life imprisonment." Although the district court found at the sentencing hearing that the government

had proven the facts necessary to justify the sentencing enhancement, it did not apply it "out of an abundance of caution."[4]   Rather, it sentenced him to 235 months, less than the statutory minimum of 20 years that would have been triggered had the district court chosen to apply the Section 841(b)(1)(A) enhancement.

The recommended Guidelines range for Ochoa was 188 to 235 months' imprisonment, and the district court sentenced Ochoa at the top of the range, 235 months.    Within-Guidelines sentences enjoy a presumption of reasonableness and are reviewed for an abuse of discretion.  *United States v. Scott*, 654 F.3d 552, 555 (5th Cir. 2011).   Ochoa does not challenge the Guidelines calculation.  Nor does he address the fact that the district court sentenced him within Guidelines.  He briefly argues that his sentence "shocks the conscience" when compared to Guerra's sentence of three years' imprisonment.   However, Guerra cooperated with DEA agents and assumed responsibility for his crime by pleading guilty.  In any event, "a mere disparity of sentences among co-defendants does not, alone, constitute an abuse of discretion." *United States v. Lemons*, 941 F.2d 309, 320 (5th Cir. 1991).   The district court did not abuse its discretion in sentencing Ochoa.

**AFFIRMED.**

---

[4] Moreover, when given the opportunity, Ochoa did not challenge any of the facts in the presentence report, which listed his prior drug conviction for possession of methamphetamine in McLennan County, Texas.