PER CURIAM: *
Louis Boyd, Jr., appeals following his conviction by a jury of conspiracy, substantive drug offenses, and firearms offenses. Boyd challenges his conviction and sentence. We agree that the evidence was insufficient to support the conspiracy conviction and therefore VACATE the district court’s judgment and REMAND for re-sentencing.
Viewed in the light most favorable to the verdict, the evidence at trial showed the following. In December 2007, police in Norco, Louisiana, began an investigation of drug dealing around a Cart-N-Carry convenience store in the area of West B Street. As part of the investigation, undercover police officer Charles Franklin began frequenting the convenience store in an effort to identify the drug dealers. Officer Franklin testified that he would go to the store, purchase beer or cigars, and sit outside talking with others in and near the parking lot. During the investigation, Franklin met Brandi Johnson and her niece Angela Lindsay, both of whom were crack users and lived nearby. On four separate occasions, Lindsay and Johnson helped Franklin purchase small amounts of crack cocaine from Boyd. These purchases ranged in amount from $40 to $100 worth of crack.
On the first occasion on May 1, 2008, Lindsay was in the parking lot and asked if Franklin was “looking for something.” When Franklin responded that he wanted “a C note,” or $100 worth of crack, Lindsay and her boyfriend both made several calls from Franklin’s cell phone in order to locate a source of supply. A short time later a man named Rodney Payne arrived, and Lindsay purchased $100 worth of crack from Payne with money supplied by Franklin. After Lindsay turned over the drugs to Franklin, the officer asked if Lindsay could purchase more drugs. She agreed and made more phone calls. Shortly thereafter, Boyd arrived in his truck. Lindsay purchased another $100 worth of crack from Boyd, again with money supplied by Franklin, which she then gave to the undercover officer.
The next sale occurred on June 11, 2008. Franklin again purchased beer and cigars at the store and waited outside. Johnson was there and asked if Franklin was looking for something. After Franklin answered affirmatively, Johnson went home for a few minutes and then returned, instructing Franklin to accompany her to New Sarpy. When Franklin asked why, Johnson said they were “going to get some stuff from Lou.” Franklin and Johnson then drove a short distance to Boyd’s home on East Easy Street. Johnson went to the door and purchased $100 worth of crack from Boyd while Franklin waited in the car.
On June 24, 2008, Franklin met Johnson again at the Cart-N-Carry and said he was interested in purchasing $40 worth of crack. Johnson again “made a few phone calls,” and Boyd arrived. Franklin gave the money to Johnson, who went to Boyd’s vehicle and returned to Franklin with the drugs.
Finally, on August 14, 2008, Franklin conversed with Johnson about purchasing *828 $60 worth of crack. According to Franklin’s testimony, Johnson made a few phone calls, went home, and then came back asking for the money. The two then walked towards Johnson’s house on West B Street. By this time, Boyd had arrived in his truck, whereupon Johnson walked up to the vehicle and leaned into the passenger side to purchase the drugs. Johnson instructed Franklin to follow her into her garage where she gave the drugs to Franklin.
On November 18, 2008, police executed a search warrant at Boyd’s house on East Easy Street while Boyd was away from the residence. Upon entry, police discovered Boyd’s cousin, Evelyn French, in a bedroom with a crack pipe. In the master bedroom, police found a digital scale, a razor blade, approximately 30 grams of crack, and a loaded handgun. Boyd was arrested shortly thereafter.
The indictment in this case charged Boyd with conspiracy to distribute and possess with intent to distribute fifty grams or more of cocaine base, four counts of distribution of cocaine base, possession with intent to distribute five grams or more of cocaine base, possession of a firearm by a convicted felon, and possession of a firearm in furtherance of a drug trafficking crime.
At trial, Lindsay and Johnson testified for the Government against Boyd. Both testified that they were drug users who purchased crack for themselves and for friends from Boyd, as well as from many other suppliers. They explained how they purchased crack on Franklin’s behalf from Boyd on the occasions discussed above. Lindsay testified that she asked Officer Franklin to give her a portion of the drugs that she purchased from Boyd but that Franklin refused and gave her cash instead.
Evelyn French also testified against Boyd. She was also a crack cocaine addict who purchased drugs both from Boyd and other drug dealers. French lived with Boyd for a short time at the East Easy Street address and testified that Boyd was dealing drugs from the home twenty-four hours per day, seven days per week. She explained that twenty to thirty people would come to the house daily to purchase drugs, some of whom spent as much as $300. She further testified that Boyd would replenish his drug supply either every day or every two to three days by driving to New Orleans to re-supply. French accompanied Boyd “on a few occasions.” The jury convicted Boyd on all counts, and Boyd now appeals.
Boyd argues that the evidence was insufficient to support his conviction for conspiracy. He contends that there was no evidence of an “agreement” with anyone to distribute crack cocaine or that the agreement involved fifty grams or more as charged in the indictment. We agree that the evidence was insufficient.
Because Boyd never moved for judgment of acquittal, our review of the sufficiency of the evidence is to determine whether the conviction amounts to a manifest miscarriage of justice. See United States v. Ochoa, 667 F.3d 643, 647 (5th Cir.2012). This standard will be met only if “ ‘the record is devoid of evidence pointing to guilt or contains evidence on a key element of the offense that is so tenuous that a conviction would be shocking.’ ” Id. (quoting United States v. Dowl, 619 F.3d 494, 500 (5th Cir.2010)).
In order to prove a conspiracy to distribute crack cocaine, the Government had to prove “(1) an agreement between two or more persons to violate the narcotics laws, (2) the defendant’s knowledge of the agreement, and (3) the defendant’s voluntary participation in the conspiracy.” *829 United States v. Zamora, 661 F.3d 200, 209 (5th Cir.2011) (internal quotation marks and citation omitted). The Government need not show an express agreement, as “a tacit, mutual agreement with common purpose, design, and understanding” is sufficient. United States v. Lewis, 476 F.3d 369, 383 (5th Cir.2007) (internal quotation marks and citation omitted). The agreement may be shown by direct or circumstantial evidence. Zamora, 661 F.3d at 209. A conspiracy may not be shown, however, by evidence that merely places the defendant “ ‘in a climate of activity that reeks of something foul.’ ” United States v. Fuchs, 467 F.3d 889, 908 (5th Cir.2006) (citation omitted). Nor may a conviction rest upon mere speculation and conjecture, or a piling of inference upon inference. United States v. Pettigrew, 77 F.3d 1500, 1521 (5th Cir.1996).
Here, the Government argues that the entirety of the circumstances shows that Boyd was involved in a conspiracy to distribute drugs with both known and unknown persons. It notes that Boyd had a supplier of narcotics in New Orleans; he engaged in hand-to-hand drug sales that were observed by police; he conducted a large volume of sales from his home; and he was found in possession of a large quantity of crack when police executed the search warrant. The Government contends that the conspiracy is shown from Boyd’s delivery of crack to Johnson, Lindsay, and French, who in turn distributed the drugs to Officer Franklin or to their friends. The Government further argues that the evidence was sufficient to show that Boyd conspired with an unknown drug supplier in New Orleans. We are not persuaded.
The evidence was clearly sufficient to show that Boyd was a drug dealer and that he distributed crack as charged in the indictment, but it 'did not show that he was engaged in a conspiratorial agreement to violate the drug laws. None of the three women who testified against Boyd indicated that she worked for Boyd or solicited drug sales on his behalf, or otherwise acted in concert with Boyd to achieve a common purpose beyond their desire to purchase drugs from him. See United States v. Cardenas, 9 F.3d 1139, 1157 (5th Cir.1993) (“An agreement to violate narcotics laws may be inferred from ‘concert of action.’ ”); see also United States v. Mitchell, 484 F.3d 762, 769 (5th Cir.2007) (holding that co-conspirators’ concert of action allowed jury to infer an agreement where defendants agreed to purchase crack cocaine together for distribution, agreed to travel together, and agreed to have another co-conspirator conduct the transaction on behalf of all of them). The only motive apparent from the testimony for the women helping Franklin was their hope that Franklin would either share the drugs with them or pay them for their assistance.
The evidence showed that the women used Boyd as their source for drugs. They all testified that they purchased crack not only from Boyd but also from other drug dealers, and the Government specifically argued to the jury that the women were merely drug users and that Boyd was the supplier. The testimony showed that when Officer Franklin purchased crack with their help, Johnson and Lindsay made several telephone calls to find a source of supply. Indeed, on the first occasion, Lindsay arranged to obtain crack from another dealer, Rodney Payne. There was no indication that Boyd had an arrangement with the women to distribute drugs other than as their street-level supplier, which is insufficient because “[djrug transactions alone do not constitute a conspiracy.” United States v. White, 569 F.2d 263, 268 (5th Cir.1978); see also United States v. Maseratti, 1 F.3d 330, 336 (5th Cir.1993) (noting that a buyer-seller relationship alone is insufficient to show a *830 conspiracy). This principle is designed to prevent the buyer-seller agreement that exists in every drug transaction from automatically becoming a conspiracy to distribute drugs. United States v. Delgado, 672 F.3d 320, 332-34 (5th Cir.2012) (en banc). The Government argues that Boyd was obviously aware that the drugs purchased by Lindsay and Johnson were meant for a third person and willingly provided the drugs for delivery. Even assuming Boyd knew that the women were purchasing the drugs for Officer Franklin, however, that fact alone does not show that Boyd and the women were knowingly participating in a plan to distribute drugs beyond a simple buyer-seller relationship. See id.
The Government further argues that the evidence showed Boyd conspired with an unknown drug supplier in New Orleans. “A person can be convicted for conspiring with unknown persons, if the indictment charges conspiracy with unknown persons and the evidence supports their existence and their complicity in the conspiracy.” United States v. Dukes, 139 F.3d 469, 475 (5th Cir.1998); see also United States v. Villasenor, 894 F.2d 1422, 1428 (5th Cir.1990). For example, in Dukes we held that the evidence was sufficient to prove a conspiracy with an unidentified drug supplier who twice brought drugs for sale to a confidential informant in the defendant’s presence and who paid the defendant a portion of the proceeds from one sale that was successfully completed. Dukes, 139 F.3d at 472, 475.
Here, the indictment charged that Boyd conspired with unknown persons, and Evelyn French testified that Boyd would replenish his drug supply by traveling to New Orleans, sometimes daily or every two or three days as necessary. But that is all that is known about Boyd’s source. Although French accompanied Boyd “on a few occasions,” she provided no other information about the identity or location of Boyd’s source, or sources, of drugs. It is not known, for example, whether Boyd obtained his drugs from the same place in New Orleans or from the same person or persons. It is not known whether Boyd used a different source or sources on the occasions that French did not accompany him. Nor is it known whether Boyd obtained his drugs in bulk or in small quantities. French testified that she did not know how much Boyd purchased when he went to New Orleans. Cf. Delgado, 672 F.3d at 332-34 (holding that evidence supported conspiracy with an unnamed drug supplier where inter alia defendant purchased “wholesale quantities of drugs” from the supplier); see also United States v. Holloway, 377 Fed.Appx. 383, 387 (5th Cir.2010) (holding that evidence was insufficient to prove a conspiracy where the evidence did not show that individuals who sold drugs to the defendant knew that the drugs were meant to be resold). In short, it cannot be inferred whether the unknown source or sources were part of a conspiracy or merely “arms-length” suppliers to Boyd. See United States v. Klein, 560 F.2d 1236, 1243 (5th Cir.1977). There is simply no evidence that Boyd’s source or sources of drugs in New Orleans were “familiar with and actively cooperated [with Boyd] to achieve the object of the conspiracy.” Id.; see also Villasenor, 894 F.2d at 1430 (holding evidence insufficient to prove conspiracy with unknown coconspirators where “we may well suspect that there likely were some, [but] there is simply no concrete or specific evidence of any”).
We therefore conclude that the evidence was insufficient to prove that Boyd was guilty of a conspiracy. The district court’s judgment must therefore be vacated. Because Boyd’s conspiracy conviction was grouped with the remaining counts of conviction under the Sentencing Guidelines’ grouping rules and affected the calculation *831 of the mandatory statutory minimum, the case must be remanded for resentencing. See U.S.S.G. §§ 3D1.2(d), 3D1.3(b).
Boyd raises two additional points on appeal. First, he argues that the district court erroneously denied a motion for new trial based on the Government’s failure to disclose evidence that Evelyn French acted as a confidential informant in an unrelated case after Boyd’s arrest but before trial. We need not address his argument that this evidence could have been used to impeach French, however, because Boyd argues on appeal only that the impeachment is relevant to the conspiracy conviction, which we have already determined must be vacated. Second, Boyd argues that the district court erred by failing to apply the Fair Sentencing Act of 2010 at sentencing. The Act, which became effective prior to Boyd’s sentencing but after his conduct of conviction, altered the amount of drug quantities necessary to trigger mandatory minimum sentences. See Pub.L. No. 111-220, § 2(a), 124 Stat. 2372 (Aug. 3, 2010). We are bound by our circuit precedent to hold that Boyd’s argument is foreclosed. See United States v. Tickles, 661 F.3d 212, 214-15 (5th Cir.2011), pet. for cert. filed (Dec. 15, 2011) (No. 11-8023).
VACATED AND REMANDED.

 Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.