# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 17, 2013

No. 12-40064

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

JOSE VIELMA-GARCIA; JESUS GONZALEZ-HINOJOSA,

Defendants-Appellants

Appeals from the United States District Court
for the Southern District of Texas
USDC No. 7:11-CR-284-1

Before SMITH, HAYNES, and GRAVES, Circuit Judges.

PER CURIAM:*

Defendants Jose Vielma-Garcia ("Vielma") and Jesus Gonzalez-Hinojosa ("Gonzalez"), timely appeal their convictions, arising out of the same set of facts, for (1) conspiring to possess with intent to distribute 1,000 kilograms or more of marijuana in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846, and (2) possessing marijuana with intent to distribute in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A), and 18 U.S.C. § 2. Defendants challenge the conspiracy and possession convictions as supported by insufficient evidence and on the basis

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

of an alternate juror's alleged participation in the deliberations. Gonzalez also appeals the six-level sentencing enhancement imposed under United States Sentencing Guidelines Manual ("U.S.S.G.") § 3A1.2(c)(1) (2011). We AFFIRM.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Acting on information that marijuana was being stored at a ranch, Border Patrol agents set up surveillance around the perimeter of the ranch. Agents testified that they observed a white pickup truck containing three individuals approach a secondary gate, and an individual—later identified as Vielma—exit the truck, unlock and open the gate to allow the truck through, and then secure the gate and return to the truck. The gate was secured by a combination lock.

Other agents then observed Defendants walking in a southwesterly direction toward a marijuana pile. Defendants were eight to ten yards away from the pile when agents began their pursuit. One agent pursued Vielma on foot until he got caught in a barbed wire fence where he was apprehended. Another agent chased Gonzalez into a thick brush where a scuffle ensued before the agent received assistance and handcuffed Gonzalez. The agents ultimately discovered a total of four separate piles of marijuana (6,024 pounds) worth approximately $5,000,000 hidden on the ranch.

Defendants spontaneously told agents that they were illegal aliens trying to make their way to Houston. Once in custody, Gonzalez also yelled to Vielma in Spanish to tell the agents that they were illegal aliens trying to make their way to Houston.

Defendants were charged with conspiracy to possess and possession with intent to distribute 1,000 kilograms or more of marijuana. Defendants pled not guilty to both counts and proceeded to trial by jury.

At trial, agents testified based on training and experience that Defendants' actions were inconsistent with those of undocumented immigrants trying to make their way to safer locations north of the border. While such immigrants

typically conceal themselves in vehicles and get dropped off ten to fifteen miles south of border checkpoints, the ranch was sixty miles from the closest checkpoint. Such immigrants also typically pack cold-weather clothing and food for their journeys; however, Defendants were wearing jeans and shirts and had no other clothing or supplies. Defendants were not accompanied by a guide or a large group, which is also atypical of undocumented immigrants. Moreover, Defendants were headed south when they were apprehended, the opposite direction from Houston.

To further rebut Defendants' version of the events, the Government showed that Vielma's wife and children live in a home six miles from the ranch. Vielma is married to Gonzalez's sister, and Gonzalez's parents live in a trailer next door to the home. The jury also heard testimony that Vielma's uncle owned the marijuana and that Defendants were there to take inventory.

Finally, the Government offered evidence of Defendants' previous marijuana convictions to show intent, knowledge, preparation, common scheme or plan, and absence of mistake. The jury found Defendants guilty on both counts of the indictment.

At the sentencing hearing, the agent who apprehended Gonzalez testified that, after pursuing Gonzalez into an area of thorny brush, he attempted to handcuff Gonzalez, and Gonzalez tried to shrug the agent off of him. The struggle continued until another agent came to the first agent's assistance and the two were able to handcuff Gonzalez. The district court found sufficient evidence to apply the Official Victim Enhancement to Gonzalez's base offense level, which increased it by six levels. *See* U.S.S.G. § 3A1.2(c)(1).

The district court sentenced Vielma to serve two concurrent 240-month terms of imprisonment followed by concurrent ten-year terms of supervised release. The district court sentenced Gonzalez to serve two concurrent 235-month terms of imprisonment followed by concurrent five-year terms of

No. 12-40064

supervised release.    The court denied Defendants' motion for a judgment of acquittal.  Both Defendants appeal their convictions; only Gonzalez appeals his sentence.

## II.  DISCUSSION

### A.    Sufficiency of the Evidence

We review Defendants' contention that the jury convicted them upon the basis of insufficient evidence de novo, in the light most favorable to the verdict. *United States v. Winkler*, 639 F.3d 692, 696 (5th Cir. 2011).  "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).    Importantly, although the Government "must do more than pile inference upon inference," *United States v. Williams-Hendricks*, 805 F.2d 496, 502 (5th Cir. 1986) (quotation marks omitted), "[t]he evidence need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt." *United States v. Moreno*, 185 F.3d 465, 471 (5th Cir. 1999).

Defendants challenge the knowledge and voluntary participation elements of their conspiracy convictions.  *See* §§ 841(a)(1), 846; *see also United States v. Ochoa*, 667 F.3d 643, 648 (5th Cir. 2012) ("To establish a conspiracy, the government must prove that: (1) an agreement existed between two or more persons to violate federal narcotics law, (2) the defendant knew of the existence of the agreement, and (3) the defendant voluntarily participated in the conspiracy.").[1]

---

[1]  Both counts required proof of more than 1,000 kilograms of marijuana.  The parties stipulated that the substance seized was marijuana.  The amount recovered—6,024 pounds—is equivalent to approximately 2,700 kilograms.

No. 12-40064

"Circumstantial evidence may establish the existence of a conspiracy, as well as an individual's voluntary participation in it, and '[c]ircumstances altogether inconclusive, if separately considered, may, by their number and joint operation . . . be sufficient to constitute conclusive proof.'" *United States v. Garcia Abrego*, 141 F.3d 142, 155 (5th Cir. 1998) (alterations in original) (citation omitted). While "[p]roof of the mere presence of the defendant at a scene of criminal activity and his association with the other defendants is insufficient to support a criminal conviction[,] . . . '[a] jury may find knowledgeable, voluntary participation from presence when the presence is such that it would be unreasonable for anyone other than a knowledgeable participant to be present.'" *United States v. Paul*, 142 F.3d 836, 840 (5th Cir. 1998) (last alteration in original) (citations omitted).

The proffered evidence was sufficient. *See Jackson,* 443 U.S. at 319. The jury heard testimony that Defendants entered a remote and highly-secured ranch containing a large quantity of marijuana through a locked gate to which one had the code and proceeded directly towards the marijuana. The jury reasonably disbelieved Defendants' theory of innocence and concluded that they were knowing, voluntary participants in a drug-trafficking conspiracy. The totality of the evidence presented allowed a jury to "find knowledgeable, voluntary participation" because it tended to show "that it would be unreasonable for anyone other than a knowledgeable participant to be present." *See Paul*, 142 F.3d at 840.

Defendants further contend that the evidence was insufficient to support the knowledge element of their possession convictions. *See* 21 U.S.C. § 841(a)(1); *see also United States v. Patino-Prado*, 533 F.3d 304, 309 (5th Cir. 2008) ("The essential elements of a violation of Section 841(a)(1) include: (1) knowledge, (2) possession, and (3) intent to distribute the controlled substance.").

No. 12-40064

The same evidence offered in support of the preceding conspiracy analysis easily defeats this argument. Agents discovered $5,000,000 worth of marijuana on the ranch. We have held that a large amount of drugs is one factor demonstrating knowledge. *United States v. Villarreal*, 324 F.3d 319, 324 (5th Cir. 2003). Further, jurors could reasonably infer knowledge from Defendants' incredulous explanation for their presence on the ranch. *See United States v. Diaz-Carreon*, 915 F.2d 951, 955 (5th Cir. 1990). Though Defendants "offered an alternative theory to explain their arrest, the jury chose to believe the testimony of the government's witnesses and reasonably concluded that [Defendants] had, beyond a reasonable doubt," committed the charged offenses. *See United States v. Guanespen-Portillo*, 514 F.3d 393, 397 (5th Cir. 2008). Accordingly, we conclude that sufficient evidence existed for a jury to convict Defendants on both counts of the indictment.

## B.   Alternate Juror Deliberations

Defendants next allege that the district court committed reversible plain error by allowing an alternate juror to participate in juror deliberations in contravention of Federal Rule of Criminal Procedure 24(c)(3).[2] Because Defendants did not raise this objection before the district court, we consider it only for plain error. *United States v. Olano*, 507 U.S. 725, 735-36 (1993). Plain-error review consists of four prongs:

> First, there must be an error or defect—some sort of '[d]eviation from a legal rule'—that has not been intentionally relinquished or abandoned . . . . Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it 'affected the

---

[2]   The rule provides: "The court may retain alternate jurors after the jury retires to deliberate. The court must ensure that a retained alternate does not discuss the case with anyone until that alternate replaces a juror or is discharged. If an alternate replaces a juror after deliberations have begun, the court must instruct the jury to begin its deliberations anew." Fed. R. Crim. P. 24(c)(3).

outcome of the district court proceedings.' Fourth . . . if the above three prongs are satisfied, the court of appeals has the *discretion* to remedy the error—discretion which ought to be exercised only if the error "'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'"

*Puckett v. United States*, 556 U.S. 129, 135 (2009) (some alterations in original) (citations omitted). "The defendant bears the burden of demonstrating that a plain error affects his substantial rights." *United States v. Gonzalez-Rodriguez*, 621 F.3d 354, 363 (5th Cir. 2010).

Defendants point to no record evidence that demonstrates that the alternate juror actually participated in the deliberations. The only evidence offered in support of this contention is the court's instruction to the jurors to "retire to the jury room to begin [their] deliberations" without an on-the-record discharge of the alternate. Without record citation or support, Vielma contends that "[a]fter this instruction, all thirteen jurors, including the alternate juror, exited to the jury room and deliberated." While an on-the-record discharge would be preferable, the record does not demonstrate that the alternate juror actually deliberated rather than being released or retained in a separate location by the court off the record.

Even assuming the existence of an error, Defendants have not satisfied their burden to prove that any error affected their substantial rights. *See Puckett*, 556 U.S. at 135; *see also Olano*, 507 U.S. at 737 ("The presence of alternate jurors during jury deliberations is not the kind of error that 'affect[s] substantial rights' independent of its prejudicial impact." (alteration in original)). We thus discern no plain error concerning the jury's deliberations.

## C.   Sentencing Enhancement

Finally, Gonzalez challenges one aspect of his sentence. He asserts that the district court erred in applying the enhancement under U.S.S.G. § 3A1.2(c)(1) which states:

No. 12-40064

(c) If, in a manner creating substantial risk of serious bodily injury, the defendant or a person for whose conduct the defendant is otherwise accountable—

> (1) knowing or having reasonable cause to believe that a person was a law enforcement officer, assaulted such officer during the course of the offense or immediate flight therefrom
>
> . . .
>
> increase by 6 levels.

We review the district court's interpretation of the Sentencing Guidelines de novo, and its factual findings for clear error. *United States v. Serfass*, 684 F.3d 548, 550 (5th Cir.), *cert. denied*, 133 S. Ct. 623 (2012). "A finding of fact is clearly erroneous only if, after reviewing all the evidence, we are left with the definite and firm conviction that a mistake has been committed." *Id.* (internal quotation marks omitted). The district court considered and adopted the Pre-sentence Investigation Report and heard conflicting evidence regarding the events surrounding Gonzalez's apprehension by the Border Patrol agents. The district court concluded—with ample evidentiary support—that Gonzalez was "shrugging" off the officer and then "struggling" with the officer in a pile of thorny branches that included "long thorns of mesquite and such" that were "almost 2 inches long" by Gonzalez's own admission. Against this backdrop, the district court's implicit conclusion that the facts surrounding the struggle met the requirements of the enhancement was not clearly erroneous.

AFFIRMED.