# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**
November 25, 2019

Lyle W. Cayce
Clerk

No. 18-10874

UNITED STATES OF AMERICA,

> Plaintiff–Appellee

versus

RONNIE KEARBY,

> Defendant–Appellant.

Appeal from the United States District Court
for the Northern District of Texas

Before OWEN, Chief Judge, JONES and SMITH, Circuit Judges.
JERRY E. SMITH, Circuit Judge:

Ronnie Kearby has had more than one brush with the law. His latest exploits led to a guilty plea of conspiracy to possess with intent to distribute methamphetamine ("meth"). The district court sentenced him to, among other things, 235 months. He appeals, challenging the procedural and substantive reasonableness of his sentence. We affirm.

No. 18-10874

I.

During May and June 2016, Kearby daily received between one and three ounces (28.35 and 85.05 grams, respectively) of meth from Nicole Herrera, whose supplier was Pablo Morales, who had imported the drugs from Mexico. Kearby consumed some of the meth but mainly distributed it around Dallas-Fort Worth. He was arrested in late June 2016. Fifteen months later, he pleaded guilty (without a plea agreement) of conspiracy to possess with intent to distribute meth in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) and 846.

Section 2D1.1 of the U.S. Sentencing Guidelines ("U.S.S.G.") established Kearby's base offense level by reference to the quantity of drugs involved in his conduct. To calculate that quantity, the presentence investigation report ("PSR") estimated (conservatively) that Kearby had purchased one ounce of meth per day. That estimate came from Herrera's statement to investigators that she'd given Kearby one to three ounces per day. The PSR multiplied that quantity by sixty days—the period that Herrera said Kearby had participated in the conspiracy. All told, the PSR's "conservative estimate" was 1,701 grams, yielding a base offense level of 32.

Next, the PSR applied a two-level importation enhancement under U.S.S.G. § 2D1.1(b)(5) because the drugs had come from Mexico. It also recommended a three-level reduction for acceptance of responsibility. The net offense level was 31, and because of Kearby's lengthy past, the criminal history category was VI. The PSR thus recommended a guideline range of 188 to 235 months.

Kearby objected to the PSR on three main grounds.[1] First, he contested

---

[1] Kearby had a fourth objection that he doesn't press on appeal, relating to the PSR's

No. 18-10874

Herrera's reliability in providing information for the drug-quantity estimate. He pointed out that Herrera had faked cooperation with the Drug Enforcement Administration and duped an agent into returning her cellphone, at which point she promptly deleted her text messages from after June 2016, which destroyed critical evidence. Kearby also said that he had participated in the conspiracy for less than the sixty days Herrera alleged. Next, Kearby objected to the importation enhancement. There was "no evidence," he claimed, that he had "ever directly or indirectly imported any [meth] from Mexico" nor that he knew the drugs were imported. Finally, he complained that he should have received a minor-participant reduction under U.S.S.G. § 3B1.2, since he had participated for (in his view, less than) two months in a conspiracy that spanned forty.

The probation office refused to change its recommendations. The PSR's addendum noted that Herrera had been a credible and reliable source; that it was irrelevant whether Kearby knew the drugs had been imported; and that Kearby was an average, not minor, participant in the conspiracy.

Fast forward to sentencing. Kearby called Special Agent Brian Finney, who had interviewed Herrera, hoping that Finney's testimony would help show that the PSR had overestimated the quantity of drugs. Things didn't go as Kearby wished. Finney confirmed that Herrera's phone didn't have any text messages between her and Kearby from before May 22, 2016, and that Herrera had deleted relevant information from it. But Finney also testified that Herrera had stated she sold one to three ounces a day to Kearby; not all of Herrera's sales had a corresponding text message; Herrera's scoops had proven reliable and accurate in Kearby's and others' cases; with Herrera's help,

---

calculation of the criminal-history score.

3

No. 18-10874

investigators had tracked down many other defendants; and the government had corroborated most of Herrera's statements. The upshot: Finney "felt confident, based on what we were able to corroborate through her Facebook and text messages, as well as our own independent investigation, that [Herrera] was being honest with us."

The court overruled Kearby's objections to the drug-quantity calculation, the importation enhancement, and the refusal to apply the minor-participant reduction. It found that the PSR had reasonably estimated the quantity based on "reliable information" and that Herrera was a credible informant. Citing our precedent, the court concluded that the importation enhancement applied regardless of Kearby's knowledge. And it adopted the PSR's finding that Kearby did not deserve a minor-participant reduction. Accordingly, it calculated a guideline range of 188 to 235 months and concluded that a 235-month sentence was appropriate in view of Kearby's criminal history.

Kearby appeals the sentence. He insists, among other things, that the district court erred in calculating the quantity of drugs, applying the importation enhancement, denying a minor-participant reduction, assuming the guidelines were mandatory, imposing an alternative sentence, and handing down a substantively unreasonable sentence.

## II.

We review sentences for reasonableness. *Gall v. United States*, 552 U.S. 38, 46 (2007). "Using a bifurcated review process, we first examine whether the district court committed any significant procedural error. If the district court's decision is procedurally sound, we then consider the substantive reasonableness of the sentence." *United States v. Nguyen*, 854 F.3d 276, 280 (5th Cir. 2017) (citation omitted).

4

No. 18-10874

A.

Kearby's main assertion is that the district court procedurally erred in calculating the quantity of drugs.  We begin with the contentions that he preserved in the district court.

1.

Kearby challenged the reliability of the calculation of quantity.  That calculation "is a factual determination," so we will not set it aside unless it was implausible in light of the whole record.  *United States v. Alford*, 142 F.3d 825, 831 (5th Cir. 1998).  "When making factual findings for sentencing purposes, [the] district court[] may consider any information which bears sufficient indicia of reliability to support its probable accuracy."  *United States v. Harris*, 702 F.3d 226, 230 (5th Cir. 2012) (per curiam) (quotation marks omitted).  Thus, it may "adopt facts contained in a PSR without inquiry, if those facts had an adequate evidentiary basis and the defendant does not present rebuttal evidence."  *United States v. Puig-Infante*, 19 F.3d 929, 943 (5th Cir. 1994).  "[A] district court may consider estimates of the quantity of drugs for sentencing purposes."[2]

First, Kearby asserts that because the government didn't corroborate Herrera's statements about the quantity sold *to Kearby*, the court clearly erred in relying on Herrera's information.  We reject that contention.  If uncorroborated hearsay is sufficiently reliable, a district court may rely on it in making sentencing findings.  *United States v. Malone*, 828 F.3d 331, 337 (5th Cir. 2016).  And the court can consider the statements of coconspirators such as Herrera—even statements that are "somewhat imprecise"—in calculating

---

[2] *Alford*, 142 F.3d at 832 (quotation marks omitted); *accord United States v. Medina*, 161 F.3d 867, 876 (5th Cir. 1998) ("The amount [of drugs], moreover, need not be limited to the actual quantities seized; the district judge can make an estimate.").

drug quantity.[3]  The information that Herrera supplied about Kearby was reliable.  Finney noted that Herrera had helped the government track down at least fifteen other defendants and that a "large majority" of the information she provided had been corroborated.  Even if investigators did not specifically corroborate her report of the quantity sold to Kearby, Kearby has failed to show that it was *implausible* that her statements were accurate.  *See Alford*, 142 F.3d at 831.

Next, Kearby maintains that a better estimate is that he received meth for 39 days, not 60.  He points out that there were no text messages between him and Herrera that predated May 22, 2016, and that he was arrested on June 29, 2016.  But because the 60-day finding was not implausible, we reject Kearby's contention.  *See id.*  Finney testified that Herrera didn't associate every transaction with a text message.  He also stated that some of Herrera's texts from May 22 indicated that Herrera and Kearby had had "prior contact about [meth]."  Thus, the 60-day finding wasn't clearly erroneous.

Finally, Kearby attacks Herrera's general credibility as a source.  He notes that she destroyed evidence and claims she had a motive to lie to "receive reductions in her own sentence."  Kearby forgets, however, that we defer to a sentencing court's credibility determinations.[4]  The district court carefully questioned Finney about Herrera before concluding that she was credible.

---

[3] *Alford*, 142 F.3d at 832; *accord United States v. Cantu-Ramirez*, 669 F.3d 619, 629 (5th Cir. 2012) (affirming reliance on coconspirator's testimony in calculating the quantity of drugs involved in an offense); *see also United States v. Rico*, 864 F.3d 381, 386 (5th Cir. 2017) ("Statements by coconspirators are sufficiently reliable to form the basis of a finding.").

[4] *See United States v. Perez*, 217 F.3d 323, 331–32 (5th Cir. 2000) ("At the sentencing hearing, the district court adopted the recommendations in the PS[R] in their entirety and, in large measure, made credibility assessments . . . . We defer to the trial court's superior position in making such credibility calls."); *United States v. Sotelo*, 97 F.3d 782, 799 (5th Cir. 1996) ("Credibility determinations in sentencing hearings are peculiarly within the province of the trier-of-fact." (quotation marks omitted)).

No. 18-10874

That is more than enough to trigger our deference.

2.

For the first time on appeal, Kearby raises several contentions related to the drug-quantity calculation. Because they were not preserved, we exercise plain-error review. *United States v. Jones*, 489 F.3d 679, 681 (5th Cir. 2007). The first requirement of plain error is that the "appellant must show (1) an error or defect . . . ." *United States v. Daniel*, 933 F.3d 370, 382 (5th Cir. 2019) (and quotation marks omitted). There is no error, plain or otherwise.

First, Kearby contends that the district court erred as a matter of law in using a "multiplier method" to calculate the drug quantity. He suggests that "[e]stimation of drug quantity using the 'multiplier' method is only appropriate where a known quantity of drugs is involved in a particular occurrence . . . and is extrapolated to other such occurrences."

We disagree that the court applied a "multiplier method," and Kearby's formulation proves it. There *was* a "known quantity of drugs" (one ounce) and a "known quantity of" days (sixty). Hence, unlike the courts in *United States v. Betancourt*, 422 F.3d 240 (5th Cir. 2005), and *United States v. Cabrera*, 288 F.3d 163 (5th Cir. 2002) (per curiam), the court did not extrapolate from a known event to predict what had happened in other *unknown* events.[5] Instead, all events were "known."[6] That the court had to dust off its calculator and run

---

[5] *See Betancourt*, 422 F.3d at 248 ("Knowing only the amount of cocaine sold to Esparza, the district court properly used this figure as a multiplier for each dealer to whom Betancourt claimed he sold cocaine."); *Cabrera*, 288 F.3d at 170–72 (affirming extrapolation of known number of immigrants smuggled on two occasions to other occasions on which the number of immigrants wasn't known).

[6] Kearby disagrees that the quantity of drugs and number of days were "known." But for reasons already described, those estimates were reliable.

No. 18-10874

the numbers does not mean it applied some sort of "multiplier method."[7]

Relatedly, Kearby contends that the district court erroneously failed to apply a "discount" "to arrive at a more reliable estimated [drug] quantity." We reject both the premise and the conclusion. Kearby does not point to any case of ours that requires such a "discount," and the estimate was both reliable and conservative.

Finally, Kearby contends that the meth *he* consumed shouldn't be counted "since [21 U.S.C. §] 841(a)(1) makes distribution unlawful, not purchases." But he properly concedes that our precedent forecloses that claim. *E.g.*, *United States v. Clark*, 389 F.3d 141, 142 (5th Cir. 2004) (per curiam). Accordingly, Kearby has failed to show plain or clear error in the calculation of quantity.

B.

Kearby challenges the district court's application of an importation enhancement under U.S.S.G. § 2D1.1(b)(5). That section allows a two-level increase

> [i]f (A) the offense involved the importation of amphetamine or [meth] or the manufacture of amphetamine or [meth] from listed chemicals that the defendant knew were imported unlawfully, and (B) the defendant is not subject to an adjustment under §3B1.2 (Mitigating Role) . . . .

1.

First, Kearby urges that the importation enhancement can't apply as a matter of law because (1) he wasn't aware that the drugs had been imported;[8] (2) the importation didn't "take place during the 'window' of [his] involvement"

---

[7] We express no view on when a "multiplier method" might be appropriate.

[8] Kearby admits that that contention is foreclosed by this court's precedent. *See United States v. Serfass*, 684 F.3d 548, 552 (5th Cir. 2012).

in the conspiracy; (3) it violates due process to apply the enhancement even where a defendant doesn't know the drugs had been imported; and (4) importation wasn't relevant conduct under U.S.S.G. § 1B1.3(a)(1)(B).

Our precedent forecloses all four contentions. As to the first two, the "distribution (or possession with intent to distribute) of imported [meth], even without more, may subject a defendant to the § 2D1.1(b)(5) enhancement." *United States v. Foulks*, 747 F.3d 914, 915 (5th Cir. 2014) (per curiam). That is, the enhancement applies even if the distributor doesn't know of the drugs' foreign origins.[9] So, it's irrelevant whether Kearby knew the drugs had come from Mexico; and, by the same logic, the importation needn't have happened during the "'window' of Kearby's involvement" in the conspiracy.

Kearby's due process point is equally barred. In *Serfass*, 684 F.3d at 553, we held that courts don't violate due process in imposing the § 2D1.1(b)(5) enhancement "without requiring knowledge of importation." Finally, we reject Kearby's contention that the enhancement can't apply because the importation wasn't relevant conduct under U.S.S.G. § 1B1.3(a)(1)(B). We dismissed the same in *United States v. Croxton*, 693 F. App'x 327, 327–28 (5th Cir. 2017) (per curiam), on the ground that mere distribution of imported drugs, "without more, may subject a defendant to the § 2D1.1(b)(5) enhancement."

## 2.

Second, Kearby asserts that his case presents a supposedly unresolved question: Whether mere *possession* (with intent to distribute) of imported meth "*involve[s]* the importation of . . . [meth]" under § 2D1.1(b)(5) (emphasis added). But we *have* answered that question—and not in a way that Kearby

---

[9] *Id.*; *accord Serfass*, 684 F.3d at 552 ("Thus, the § 2D1.1(b)(5) sentencing enhancement applies if the offense involved the importation of amphetamine or [meth] regardless of whether the defendant had knowledge of that importation." (quotation marks omitted)).

would have preferred. In *United States v. Rodriguez*, 666 F.3d 944, 946 (5th Cir. 2012), the defendant pleaded guilty of possession with intent to distribute meth, much like Kearby's guilty plea of conspiracy to do the same. The defendant objected to the importation enhancement, complaining that her "offense did not involve the importation of [meth], because the importation was complete before she came into possession." *Id.* We disagreed, noting that "[t]he scope of actions that 'involve' the importation of drugs is larger than the scope of those that constitute the actual importation." *Id.*

### 3.

Finally, Kearby attacks the district court's factual findings on the importation enhancement, urging that there was insufficient evidence that the drugs had been imported. But Kearby told the district court that he was not challenging the sufficiency of the evidence. In his written objections to the PSR, he conceded that "the evidence shows that Pablo Morales imported the [meth] from Mexico, providing it to Herrera, who then sold a small percentage of that [meth] to the Defendant." And at sentencing, after the court asked Kearby whether he contended that the drugs "w[ere] not imported," Kearby clarified that he was not doing so. The issue is thus waived.[10]

### C.

Kearby contends that the district court procedurally erred in refusing to apply a minor-participant reduction under U.S.S.G. § 3B1.2(b), which allows,

---

[10] Kearby also complains that there was insufficient evidence that he was involved with the "manufacture of . . . [meth] from listed chemicals that the defendant knew were imported unlawfully." U.S.S.G. § 2D1.1(b)(5). But that (understandably) misreads the PSR. Though the PSR initially stated that Kearby's "offense involved the importation of [meth] from listed chemicals that the defendant knew were imported unlawfully," that was merely an error. The amended PSR later stated that the enhancement applied only because "[t]he [meth] the defendant obtained from Herrera was imported from Mexico."

among other things, a two-level reduction "[i]f the defendant was a minor participant in any criminal activity." That guideline is intended to account for defendants who are "substantially less culpable than the average participant in the criminal activity." *Id.* at cmt. n.3(A). A minor-participant reduction is appropriate for one "who is less culpable than most other participants in the criminal activity, but whose role could not be described as minimal."[11]

Whether a minor-participant reduction is appropriate turns "on the totality of the circumstances." U.S.S.G. § 3B1.2 cmt. n.3(C). The district court should consider five factors concerning the defendant's knowledge, planning, authority, responsibility, and benefit from the illegal scheme. *See id.* The court need not "expressly weigh each factor in § 3B1.2 on the record." *United States v. Torres–Hernandez,* 843 F.3d 203, 209 (5th Cir. 2016). Instead, the court sufficiently addresses the factors if the parties cite them and proffer facts and contentions relating to them.[12]

Kearby contends that the § 3B1.2 factors "were not given individualized consideration." He maintains that because the PSR stated "only the bare assertion and conclusion that 'the defendant was an average participant in this conspiracy,'" the district court "adopted only a conclusory statement with no factual support." Kearby preserved that contention, so we evaluate "the

---

[11] *Id.* at cmt. n.5. This court looks to note 5 of the commentary to § 3B1.2 for the definition of a minor participant. *See, e.g.*, *United States v. Martinez*, 921 F.3d 452, 483 (5th Cir. 2019) (quoting U.S.S.G. § 3B1.2 cmt. n.5 in defining a "minor participant").

[12] *Torres-Hernandez*, 843 F.3d at 209–10; *accord United States v. Ramirez-Esparza*, 703 F. App'x 276, 279–80 (5th Cir. 2017) (per curiam) (citation and quotation marks omitted):

> Ramirez-Esparza also argues that the district court erred by focusing on this one factor rather than considering all of the listed factors. We disagree. A district court is not required to expressly weigh each factor in § 3B1.2 on the record. The record reveals that the district court was presented with facts and arguments implicating other listed factors both in the PSR documents, Ramirez-Esparza's written objections to the PSR, and at sentencing.

No. 18-10874

district court's interpretation and application of the sentencing guidelines de novo and its findings of fact for clear error." *United States v. Lord*, 915 F.3d 1009, 1017 (5th Cir.), *cert. denied*, 140 S. Ct. 320 (2019).

The district court did not err in refusing to apply a minor-participant reduction. Before the court ruled, each party presented its contentions about the enhancement. The court was apprised of the relevant factors in the government's response to Kearby's written objections to the PSR. *See Torres–Hernandez*, 843 F.3d at 209–10. And, contrary to Kearby's suggestions, the court did not adopt a merely conclusory assertion when it approved the PSR's findings. The PSR's addendum determined that Kearby "purchased and sold [meth]," which is behavior part and parcel of a drug conspiracy. It then properly concluded that Kearby wasn't entitled to a reduction. There is no error in the decision not to apply a minor-participant reduction.

## D.

Finally,[13] having found no procedural errors, we evaluate whether the 235-month sentence was substantively reasonable. *Nguyen*, 854 F.3d at 280. Kearby thinks it wasn't, but he mainly repackages his complaints of procedural error that we have already rejected.[14] Compounding the problem, Kearby didn't object to substantive reasonableness at sentencing, so we review for plain error. *United States v. Whitelaw*, 580 F.3d 256, 259–60 (5th Cir. 2009).

---

[13] Kearby also contends that the district court erroneously believed that the guidelines were mandatory and that it wrongfully imposed an alternative sentence. But "[b]ecause we do not consider arguments raised for the first time in a reply brief, we decline to address [those] issue[s]." *United States v. Transocean Deepwater Drilling, Inc.*, 767 F.3d 485, 492 (5th Cir. 2014).

[14] Kearby asserts, for example, that the district court violated the Constitution in sentencing him "on the basis of [in]accurate information"; that purchases for individual use shouldn't have been considered; and that the court shouldn't have relied on Herrera's statements to investigators.

Under that (or any) standard, Kearby doesn't overcome the "rebuttable presumption of reasonableness" of a within-guideline sentence like his. *United States v. Smith*, 440 F.3d 704, 707 (5th Cir. 2006). The sentence was reasonable in light of Kearby's extensive criminal history, and the district court adequately considered the 18 U.S.C. § 3553(a) factors. Accordingly, the judgment of sentence is AFFIRMED.