# United States Court of Appeals
# for the Fifth Circuit

————————

No. 22-51046

————————

United States Court of Appeals
Fifth Circuit

**FILED**

March 1, 2024

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

JACOB RAY OWENS,

*Defendant—Appellant*.

_____

Appeal from the United States District Court
for the Western District of Texas
USDC No. 7:22-CV-120

_____

Before WIENER, WILLETT, and DOUGLAS, *Circuit Judges*.

DANA M. DOUGLAS, *Circuit Judge*:

Jacob Ray Owens pleaded guilty to conspiracy to possess with intent to distribute 50 grams or more of actual methamphetamine. The district court sentenced him to 324 months of imprisonment, followed by a five-year term of supervised release. Pursuant to 28 U.S.C. § 2255, Owens challenges his sentence, arguing that his trial and appellate counsel were ineffective for failing to object to the purity of methamphetamine attributed to him. In denying habeas relief, the district court held that Owens failed to show that he was prejudiced by his counsels' performance. For the following reasons, we AFFIRM.

No. 22-51046

I.

In August 2018, Drug Enforcement Administration (DEA) agents began to investigate Owens's co-conspirator Brian Edward Stowe for trafficking methamphetamine. A few months later, Owens and other co-conspirators were driving through Arizona when police officers conducted a traffic stop, found 10.6 ounces of methamphetamine in the car, and arrested them. While in custody, Owens called Stowe and said they need to "get to work" and "get things going when he gets released." Owens also called other co-conspirators to discuss how Stowe would "salvage the business."

At a second traffic stop, on November 28, 2018, police officers discovered one of the co-conspirators with methamphetamine. The co-conspirator confessed that he or she had traveled with Stowe and another individual to Tijuana, Mexico, during Thanksgiving to retrieve methamphetamine. A DEA lab report confirmed that the co-conspirator possessed about 205.5 grams of 98% pure methamphetamine, equivalent to 201.3 grams of *actual* methamphetamine.

On January 2, 2019, officers arrested Stowe. He confessed that he partnered with Owens to import and sell methamphetamine. For sourcing methamphetamine, Stowe told officers that he uses an individual that Owens did not. Stowe further admitted that he, Owens, and another co-conspirator purchased five pounds of methamphetamine during a trip to Tijuana, Mexico, on an undisclosed date. Stowe confessed that he made at most six trips to Tijuana, Mexico, and transported about nine to ten pounds total of methamphetamine.

A grand jury charged Owens and Stowe with conspiring to possess with intent to distribute 50 grams or more of actual methamphetamine. Owens pleaded guilty without a plea agreement. In the PSR, the probation officer determined that Owens was responsible for at least 2.56 kilograms of

2

No. 22-51046

actual methamphetamine. That figure is based only on the 10.6 ounces of methamphetamine seized from Owens during his arrest on November 5, 2018, and the five pounds of methamphetamine that he jointly transported with Stowe from Mexico. The DEA did not test the purity of the methamphetamine attributed to Owens. Because the district court found Owens accountable for at least 1.5 kilograms but less than 4.5 kilograms of actual methamphetamine, his base offense level was 36. *See* U.S.S.G. § 2D1.1(a)(5), (c)(2). With a total offense level of 37 and a criminal history category of V, Owens's Sentencing Guideline range was 324 to 405 months.[1]

## A.

At sentencing, Owens's trial counsel objected to, *inter alia*, the quantity of actual methamphetamine attributed to Owens. Specifically, his trial counsel contended that the PSR referenced two incidents—on November 28, 2018, and January 2, 2019—that occurred *after* Owens's arrest and were thus not attributable to Owens. The probation officer clarified that "[n]o drugs from November 28, 2018, or January 2, 2019, were attributed to Owens." Owens's counsel never objected that the 2.56 kilograms of methamphetamine attributed to Owens was not the same purity as the methamphetamine seized on November 28.

The court adopted the PSR's findings and application of the Guidelines and accordingly sentenced Owens to 324 months in prison, followed by five years of supervised release.

## B.

On direct appeal, Owens's appellate counsel moved for summary disposition and raised an as-applied Sixth Amendment sentencing challenge,

---

[1] To determine Owens's offense level, the probation officer used the 2018 U.S. Sentencing Guidelines Manual.

3

which he conceded was foreclosed by our precedent.[2] Specifically, Owens's appellate counsel raised whether it was a violation of the Sixth Amendment for the district court, relying on Stowe's confessions, to attribute the five pounds of methamphetamine to Owens.  He argued that Stowe's admission was neither Owens's admission nor found by a jury. Instead, it was a judge-found fact that had increased Owens's Sentencing Guidelines range from 210 to 262 months to 324 to 405 months. Because that argument is foreclosed by *United States v. Hernandez*, 633 F.3d 370, 374 (5th Cir. 2011), this court affirmed the district court's judgment. The Supreme Court denied Owens's petition for a writ of certiorari.

## C.

Owens subsequently filed a 28 U.S.C. § 2255 motion in the district court, alleging that his trial and appellate counsel were ineffective for failing to challenge the purity of methamphetamine attributed to him. The district court denied Owens's motion because he failed to show that he was prejudiced by any deficient performance. Further, the district court concluded that the sentencing judge did not commit clear error by inferring that the methamphetamine attributed to Owens had the same purity as the methamphetamine seized from his co-conspirators on November 28, 2018. The district court explained that (1) the purity of the methamphetamine seized on November 28 was supported by reliable evidence, including a DEA

---

[2] *See United States v. Hernandez*, 633 F.3d 370, 374 (5th Cir. 2011) ("Irrespective of whether Supreme Court precedent has foreclosed as-applied Sixth Amendment challenges to sentences within the statutory maximum that are reasonable only if based on judge-found facts, such challenges are foreclosed under our precedent." (footnote omitted)); *Groendyke Transp., Inc. v. Davis*, 406 F.2d 1158, 1162 (5th Cir. 1969) (observing that summary disposition is proper when "the position of one of the parties is clearly right as a matter of law so that there can be no substantial question as to the outcome of the case").

lab report; (2) the methamphetamine was seized from within the same conspiracy; and (3) Owens did not meet his burden of rebutting this PSR information as materially untrue, inaccurate, or unreliable. The district court concluded that an evidentiary hearing was unnecessary because the record conclusively showed that Owens was not entitled to relief on any of his claims.

Accordingly, the district court denied the § 2255 motion without a hearing, dismissed his action with prejudice, and denied issuance of a certificate of appealability (COA). Owens filed a timely notice of appeal. This court granted a COA for both of his ineffective-assistance claims. We have jurisdiction under 28 U.S.C. §§ 1291 and 2253(c)(1). *See Gonzalez v. Thaler*, 565 U.S. 134, 141–42 (2012).

## II.

"When evaluating the denial of a § 2255 motion, the court of appeals reviews factual findings for clear error and conclusions of law de novo." *United States v. Phea*, 953 F.3d 838, 841 (5th Cir. 2020) (per curiam) (citing *United States v. Olvera*, 775 F.3d 726, 728–29 (5th Cir. 2015)). "A claim of ineffective assistance of counsel is a mixed question of law and fact that this court reviews de novo." *Id.* (citing *United States v. Rivas-Lopez*, 678 F.3d 353, 356 (5th Cir. 2012)).

"An ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." *Massaro v. United States*, 538 U.S. 500, 504 (2003). We analyze Owens's claim under the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To prevail, Owens must show that (1) his counsels' performance was deficient and (2) the deficient performance prejudiced the defense. *See id.* To establish deficient performance, he must prove that his counsels' assistance fell "below an

objective standard of reasonableness." *United States v. Conley*, 349 F.3d 837, 841 (5th Cir. 2003) (quoting *Strickland*, 466 U.S. at 688). And to establish prejudice, Owens "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *See Strickland*, 466 U.S. at 694.

"Effective appellate counsel should not raise every nonfrivolous argument on appeal, but rather only those arguments most likely to succeed." *See United States v. Massey*, 79 F.4th 396, 401 (5th Cir. 2023) (quoting *Davila v. Davis*, 582 U.S. 521, 533 (2017)). Appellate counsel is responsible for making "solid, meritorious arguments based on directly controlling precedent." *Id.* (quoting *Conley*, 349 F.3d at 841).

Owens requests that we vacate his sentence because his trial and appellate counsel were constitutionally ineffective for failing to object to the finding that the 2.56 kilograms of methamphetamine attributed to him was actual methamphetamine, instead of a mixture containing methamphetamine. Owens's *Strickland* claim fails "if he cannot establish either the deficient performance or prejudice prong; a court need not evaluate both if he makes an insufficient showing as to either." *See Blanton v. Quarterman*, 543 F.3d 230, 235 (5th Cir. 2008).

Our *Strickland* inquiry begins with whether Owens's trial and appellate counsel were deficient. The district court determined that Owens's counsel "may have" provided deficient performance by failing to object regarding the purity of methamphetamine attributed to Owens. The Government does not challenge the district court's ruling regarding the deficiency prong and relies solely on the prejudice prong. Because Owens fails to show prejudice, as discussed below, we need not address whether Owens's counsel may have been deficient.

Owens contends that, if his trial and appellate counsel had objected to the lack of evidence regarding the purity of methamphetamine attributed to him, there is a reasonable probability that he would not have received a base offense level of 36, which was calculated based on him having at least 1.5 kilograms of actual methamphetamine, and that he would have received a lesser sentence based on a mixture of, rather than actual, methamphetamine. He argues that the district court erred when analyzing *Strickland*'s prejudice prong by (1) disregarding the reasonable-probability standard; (2) concluding, without holding an evidentiary hearing, that the government could have proven the purity of methamphetamine; and (3) basing that conclusion on the purity of methamphetamine that was seized from a conspiracy that was outside of Owens's conspiracy.

Relevant here, the Guidelines provide that:

> "Methamphetamine (actual)" refer[s] to the weight of the controlled substance, itself, contained in the mixture or substance . . . . In the case of a mixture or substance containing . . . methamphetamine, use the offense level determined by the entire weight of the mixture or substance, or the offense level determined by the weight of the . . . methamphetamine (actual), *whichever is greater.*

U.S.S.G. § 2D1.1(c), n.B (U.S. Sent'g Comm'n 2018) (emphasis added).

In other words, "[r]egardless of the language of the indictment, the Guidelines advise the district court to apply the offense level determined by the weight of the *pure* methamphetamine in the mixture or substance if doing so would result in a higher offense level." *United States v. Aparicio*, 963 F.3d 470, 475 (5th Cir. 2020) (emphasis added) (citing U.S.S.G. § 2D1.1(c), n.(B); *United States v. Molina*, 469 F.3d 408, 414 (5th Cir. 2006)).

"The district court's factual findings of the amount of drugs involved must be supported by what it could fairly determine to be a preponderance of

the evidence." *United States v. Sherrod*, 964 F.2d 1501, 1508 (5th Cir. 1992). "When making factual findings for sentencing purposes, district courts may consider any information which bears sufficient indicia of reliability to support its probable accuracy." *United States v. Harris*, 702 F.3d 226, 230 (5th Cir. 2012) (per curiam) (internal quotation marks and citation omitted). "Generally, a PSR bears sufficient indicia of reliability to be considered as evidence by the sentencing judge in making factual determinations." *Id.* (internal quotation marks and citation omitted). Thus, the court "may adopt the facts contained in a PSR without further inquiry if those facts have an adequate evidentiary basis with sufficient indicia of reliability and the defendant does not present rebuttal evidence or otherwise demonstrate that the information in the PSR is unreliable." *Id.* (internal quotation marks and citation omitted) (alteration adopted).

Accordingly, we afford significant discretion to the sentencing court in calculating drug quantity and quality under the Guidelines. *See, e.g.*, *United States v. Dinh*, 920 F.3d 307, 313 (5th Cir. 2019) (explaining that a district court properly used samples of a mixture of drugs to calculate overall drug quantity for sentencing); *United States v. Lucio*, 985 F.3d 482, 485–88 (5th Cir. 2021) (finding that a district court permissibly calculated drug quantity and purity based on cryptic text messages). And we give the district court "wide latitude" in our review for clear error. *See United States v. Betancourt*, 422 F.3d 240, 248 (5th Cir. 2005) (quoting *United States v. Cothran*, 302 F.3d 279, 287 (5th Cir. 2002)). "As a fact finding, the calculation is 'entitled to considerable deference' and will not be reversed 'as long as it is plausible in light of the record as a whole.'" *Lucio*, 985 F.3d at 485 (quoting *United States v. Koss*, 812 F.3d 460, 466 (5th Cir. 2016)).

Because the 205.5 grams seized from Stowe's co-conspirator in the scope of the conspiracy was 98% pure, the district court could properly find at the very least that the five pounds attributed to Owens were also 98%

pure—which means that Owens was accountable for at least 1.5 kilograms of *actual* methamphetamine and was thus properly sentenced to a within-Guidelines sentence of 324 months' imprisonment. Consider the following uncontested information from the PSR.

The PSR shows that Stowe and Owens participated in the same larger conspiracy to traffic methamphetamine. While in jail, Owens placed multiple calls to Stowe and told him that "they need to get things going when he gets released." Owens also made calls "to other co-conspirators and they discussed how Stowe would 'salvage the business.'" A co-conspirator told police that "he/she, an unknown female, *and Stowe* made a trip to Tijuana, Mexico," to obtain the 98%-pure methamphetamine. Owens did not dispute any of these facts in the PSR. That trip and its 98%-pure methamphetamine were thus reasonably part of the broader conspiracy involving both Stowe and Owens.

The PSR also establishes that Stowe, Owens, and another conspirator picked up five pounds of methamphetamine in Tijuana, Mexico. Owens does not contest this fact, either.

The dissent correctly notes that the PSR says that "Stowe reported he has a Mexican contact [singular] and a conspirator met the contacts [plural] in Tijuana during their trip," in which they obtained the 98%-pure methamphetamine. But we disagree that this renders the PSR unreliable and the district court's inferences and sentence improper. The PSR elsewhere says, with no uncertainty, that Stowe "utilizes an individual (not Owens' individual) to find him methamphetamine." That distinguishes this case from our unpublished, nonbinding decision in *United States v. Majors*, Nos. 20-40405 & 20-40656, 2022 WL 301545 (5th Cir. Feb. 1, 2022) (per curiam), cited by the dissent. There, we concluded that the PSRs "lack[ed] an evidentiary basis for $500,500 in restitution" because they stated that the

victim lost $482,000 and then, elsewhere, that the victim lost $460,000—that is, it gave two different estimates, *neither of which* justified the full $500,500 requested. *Id.* at *2 (internal quotation marks and citation omitted). By contrast, Owens's PSR *twice* conveys Stowe's admissions that he has a "contact" or "individual" in Tijuana, Mexico. Owens offers no rebuttal evidence on this point.

The district court need not rule out every possible alternative conclusion where, as here, its drug quality and quantity findings are supported by the available information. *See, e.g.*, *United States v. Cooper*, 274 F.3d 230, 239 (5th Cir. 2001) (noting that the heroin "conceivably could have been destined for others" but concluding that that "[t]here is no clear error in the district court's findings" because other evidence made it "not implausible that the heroin was meant for Cooper and Faulk"). Moreover, our deference to the district court is such that "the court can consider the statements of coconspirators . . . even statements that are 'somewhat imprecise'—in calculating drug quantity." *See United States v. Kearby*, 943 F.3d 969, 974 (5th Cir. 2019) (citing *United States v. Alford*, 142 F.3d 825, 832 (5th Cir. 1998)); *see also United States v. Arayatanon*, 980 F.3d 444, 451 (5th Cir. 2020) ("[T]he drug-quantity determination in the PSR is sufficiently reliable even if based on a coconspirator's 'imprecise' testimony, especially absent any competent rebuttal evidence from [the defendant] . . . ."); *United States v. Cantu-Ramirez*, 669 F.3d 619, 629 (5th Cir. 2012) (affirming district court's reliance on co-conspirator's testimony in calculating the quantity of drugs involved in an offense); *United States v. Rico*, 864 F.3d 381, 386 (5th Cir. 2017) ("Statements by coconspirators are sufficiently reliable to form the basis of a finding."). "[T]o find that evidence . . . unreliable for sentencing purposes, where the government's burden of proof is by a preponderance of the evidence, would automatically call into question" the validity of Owens's conviction, which is not at issue on this appeal. *See*

*Cantu-Ramirez*, 669 F.3d at 629. For these reasons, it is "plausible in light of the record as a whole" that the five pounds of marijuana attributed to Owens were obtained from Stowe's contact in Tijuana and thus also 98% pure, yielding at least 1.5 kilograms of actual methamphetamine. *See Lucio*, 985 F.3d at 485 (citation omitted).

The district court properly distinguished *United States v. Rios Baltazar*, 831 F. App'x 682, 682–83 (5th Cir. 2020) (per curiam). In that case, this court held that a district court committed reversible plain error by finding that a defendant had possessed actual methamphetamine, rather than a mixture containing methamphetamine, because "[t]here was no information in the PSR supporting the finding." *Id.* Due to the lack of supporting information—such as lab results, admissions, or any discussion of the methamphetamine's purity—this court determined that "the PSR's factual assertion that the drug quantity . . . was actual methamphetamine did not have an adequate evidentiary basis with sufficient indicia of reliability to support its probable accuracy." *Id.* at 683.

While there was no PSR information about purity in *Baltazar*, there is here: The PSR here included the "DEA laboratory analysis of the 201.3 grams of a substance seized from one of Stowe's co-conspirators" and information about the conspiracy involving Stowe and Owens. Although the probation officer did not attribute that amount of methamphetamine to Owens, its purity nonetheless provides a reliable data point for determining the purity of the five pounds that were obtained from the same conspiracy and subsequently attributed to Owens.

Owens cites our unpublished, nonbinding decision in *United States v. Davalos-Cobian*, 714 F. App'x 371 (5th Cir. 2017) (per curiam), but that case is also of no help to him. In that case, the PSR did not contain sufficiently reliable evidence tying the samples seized from a co-conspirator to the

defendant because it was known that the co-conspirator had other suppliers aside from the defendant, the co-conspirator had issues converting the methamphetamine from the liquid form distributed by the defendant to the crystalline form seized from the co-conspirator, and the purities of past samples seized from the defendant's co-conspirators "varie[d] vastly." *Id.* at 374. By contrast, there is evidence here of a common supplier and no evidence of unreliable or inconsistent purity determinations.

Accordingly, the district court plausibly inferred, by a preponderance of the evidence and in light of the record as a whole, that Owens was accountable for at least 1.5 kilograms of actual methamphetamine and thus properly sentenced him within the Guidelines to 324 months' imprisonment. *See Lucio*, 985 F.3d at 485 (citation omitted); *Sherrod*, 964 F.2d at 1508; *cf. Arayatanon*, 980 F.3d at 452 ("[O]n this record, the district court could plausibly infer, by a preponderance of evidence, that the methamphetamine was imported."). Because Owens's evidentiary argument is meritless, the district court would have adopted the same guideline range and imposed the same sentence even if the objection were made. Thus, Owens cannot show a reasonable probability that "the result of the proceeding would have been different" had his trial counsel objected at sentencing or his appellate counsel raised the argument on appeal. *See Strickland*, 466 U.S. at 694.

Finally, Owens argues that the district court erred by resolving an evidentiary question without a hearing. We disagree. As the district court explained, "[a] motion brought under § 2255 can be denied without a hearing only if the motion, files, and records of the case conclusively show that the prisoner is entitled to no relief.'" *See United States v. Bartholomew*, 974 F.2d 39, 41 (5th Cir. 1992) (per curiam). In reviewing the record, the district court could properly rely on the PSR and Guidelines "to apply the offense level determined by the weight of the pure methamphetamine" as it resulted "in

No. 22-51046

a higher offense level." *See Aparicio*, 963 F.3d at 474–75. Thus, the district court did not err in denying an evidentiary hearing.

Accordingly, we AFFIRM the district court's denial of Owens's § 2255 motion.

No. 22-51046

JACQUES L. WIENER, JR., *Circuit Judge*, dissenting:

To sentence Jacob Ray Owens under the guidelines for possession with intent to distribute actual methamphetamine, the district court assumed that the drugs attributed to Owens had the same purity as those recovered from a separate coconspirator during a separate investigation. In affirming that court's denial of Owens's § 2255 motion, my colleagues hold that this inference was reasonable. I respectfully disagree. Instead, I would remand this case, either for an evidentiary hearing or for resentencing using the lower guidelines for conspiracy to possess with intent to distribute a mixture or substance containing methamphetamine.

As the majority cogently lays out, the PSR concluded that Owens was responsible for at least 2.56 kilograms of actual methamphetamine: the 10.56 ounces recovered when he was arrested on November 5, 2019, and the five pounds that his co-conspirator, Brian Edward Stowe, says Owens helped him transport from Tijuana. Neither of these quantities were ever tested to determine their purity. Instead, the sentencing court relied on the testing of 205.5 grams of methamphetamine recovered from a confidential source working with Stowe, which was found to be 98% pure. The sentencing court thus inferred that the 2.56 kilograms attributed to Owens had a purity level that was identical to that of the methamphetamine seized from the confidential source because that methamphetamine came from Stowe, and Stowe and Owens were in the same trafficking conspiracy.

Other circuits have noted that law enforcement is rarely able "to recover all the methamphetamine a defendant is deemed responsible for at sentencing" for the purposes of laboratory testing. *United States v. Madison*, 863 F.3d 1001, 1006 (8th Cir. 2017). As a result, "a drug's source, price and appearance as well as statements or testimony by co-conspirators, users or dealers" may constitute evidence of purity. *United States v. Williams*, 19

14

F.4th 374, 380 (4th Cir. 2021). However, such evidence must be "sufficiently reliable and specific." *Id.*

The majority concludes that the following is sufficiently reliable evidence on which the district court could reasonably rely in charging Owens with 2.56 kilograms of actual methamphetamine: (1) Owens and Stowe were partners and, when he was in custody after being arrested with the 10.6 ounces, Owens placed multiple calls to Stowe to discuss their "work" and "business"; (2) Stowe sourced methamphetamine from Tijuana several times and made one trip to Tijuana with Owens where they purchased five pounds; and (3) some methamphetamine from Stowe was 98% pure. But, while a drug's source can be probative of purity, *see Williams*, 19 F.4th at 380, it is unclear whether the five pounds Stowe and Owens received came from the same supplier as the 205.5 grams later recovered from the confidential source. In fact, the PSR suggests that Stowe might have had multiple contacts for purchasing methamphetamine in Tijuana. It is not reasonable to infer that, simply because Owens worked with Stowe, the methamphetamine that Owens is charged with possessing must have been the same purity as the methamphetamine Stowe was separately involved in distributing, even if both quantities came from the same city. *See United States v. Davalos-Cobian*, 714 F. App'x 371, 373 (5th Cir. 2017) (per curiam) (holding that a PSR did not have "sufficiently reliable evidence" to connect the drugs in question to the defendant, as the middleman had "other suppliers"); *cf. United States v. Rodriguez*, 666 F.3d 944, 947 (5th Cir. 2012) (determining that it was not clear error to infer that meth from the same supplier and sold at the same price had a similar purity level). My colleagues would surely agree that it is not reasonable to assume that all methamphetamine originating in Tijuana has the same purity.

The PSR admittedly makes inconsistent use of the singular "contact" versus the plural "contacts," even in the same sentence. The

majority notes that the PSR "elsewhere says, with no uncertainty, that Stowe 'utilizes an individual,'" and thus "*twice* conveys" that Stowe had only one supplier. But the PSR also says "with no uncertainty" that Stowe dealt with "people" in Mexico, which evens out the scorecard at 2-2. Because the reasonableness of holding Owens responsible for actual methamphetamine comes down to a finding that Stowe had only one supplier in Tijuana, and the PSR waffles on this point, it was unreasonable for the district court to adopt and rely on the PSR without further evidentiary exploration. *See* U.S.S.G. § 6A1.3(a) (explaining that "the information [in a PSR must have] sufficient indicia of reliability to support its probable accuracy"); *see also United States v. Majors*, Nos. 20-40405 & 20-40656, 2022 WL 301545, at *2 (5th Cir. Feb. 1, 2022) (quoting *United States v. Cantu-Ramirez*, 669 F.3d 619, 629 (5th Cir. 2012)) (finding PSRs to be lacking "an adequate evidentiary basis" because they were "internally inconsistent").[1]

I recognize that we must give deference to the district court's factual findings. *United States v. Kearby*, 943 F.3d 969, 974 (5th Cir. 2019). But these findings must be supported by a "preponderance of the relevant and *sufficiently reliable* evidence." *United States v. Aguilar-Alonzo*, 944 F.3d 544, 549 (5th Cir. 2019) (emphasis added) (citation omitted). The PSR is not such evidence. Based on the information before that court, I respectfully cannot agree that it acted reasonably in finding Owens responsible for at least 2.56 kilograms of actual methamphetamine, as opposed to a mixture or substance

---

[1] I agree with the majority that the facts of *Rios Baltazar* are distinguishable from the case at hand. *See* 831 F. App'x 682, 682 (5th Cir. 2020) (per curiam). The PSR in *Rios Baltazar* had no information at all to support the sentencing court's purity finding, whereas here the PSR does note the 98% purity of the 205.5 grams recovered from the confidential source. However, as I have explained, I do not see how the district court reasonably inferred that the purity of the 205.5 grams was probative of the purity of the methamphetamine underlying Owens's conviction.

containing methamphetamine. Because the guidelines for the two differ, had Owens's counsel objected to the court's purity determination, there is a reasonable probability that "the result of the proceeding would have been different." *See Strickland v. Washington*, 466 U.S. 668, 694 (1984). I would therefore remand this case to the district court for (2) an evidentiary hearing or (2) resentencing based on the guidelines for conspiracy to possess with intent to distribute a mixture or substance containing methamphetamine.